CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD CO.

*v.*

JAMES E. BOYCE.

1.  BAGGAGE—*what may be included in.*  A sacque and muff, and silver napkin rings, can not be said to constitute any part of a gentleman's traveling baggage, and no recovery can be had for their value in case of a loss.

2.  SAME—*when carrier's responsibility terminates.*  The responsibility of a carrier of passengers, for baggage, continues until the owner has had reasonable time and opportunity to come and take the same away, after it has reached its destination.  If not called for in a reasonable time, it may be stored in a secure warehouse, and the liability of carrier then ceases, and that of warehouseman attaches.

3.  LAW AND FACT—*reasonable time.*  What constitutes a reasonable time and opportunity to call for baggage by a passenger, is a mixed question of

law and fact, depending very much upon the peculiar facts of each individual case; but where the facts are undisputed, it is purely a question of law, and the court should decide it.

4. CARRIER—*liability can not be extended by sickness of passenger, as to his baggage.* The fact that a passenger on a railway is taken sick, and is given a lay-over ticket, so that he does not reach his destination as soon as his baggage, will not have the effect of extending the liability of the carrier as insurer beyond what it would otherwise be, and prevent the liability of warehouseman from attaching.

5. Unless the carrier itself is at fault, the passenger can not, for purposes of his own convenience, or by reason of any inevitable accident to himself, be permitted to extend the strict and rigid liability incident to common carriers in respect to baggage after it has reached its destination.

6. Where a passenger for Chicago, with baggage, being unwell, obtained a lay-over ticket for his own accommodation, and his baggage arrived on the 6th or 7th of October, 1871, and was stored in the company's warehouse, and the passenger did not arrive in Chicago until the 11th of October, and the baggage, in the mean time, was destroyed by fire, without fault on the part of the carrier, it was *held*, that the carrier was not liable for the loss.

APPEAL from the Superior Court of Cook county; the Hon. John Burns, Judge, presiding.

Mr. Thos. F. Withrow, for the appellant.

Messrs. Peckham & Brown, for the appellee.

Mr. Justice Scott delivered the opinion of the Court:

The facts in this case are not controverted. Appellee was a passenger, with a through ticket, purchased at San Francisco from that city to Chicago, over the Central Pacific, the Union Pacific and appellant railroads. He carried with him an ordinary traveling trunk and a box of photographs. The trunk was checked from San Francisco to Ogden, but the Central Pacific Railroad Company refused to check the box as baggage, alleging it was express matter. At Ogden, however, both trunk and box were checked to Omaha. Before arriving at the latter place, appellee surrendered his checks to Omaha, and received checks from appellant's agent, in lieu of those delivered up, for his baggage over appellant's road to Chicago.

Appellee at once became a passenger on appellant's cars.

His baggage was on the same train with him, and, in the ordinary course of travel, ought to have, and perhaps did, arrive at Chicago on the 6th or 7th of October, 1871. On account of ill health, appellee stopped at Wilton, Iowa, on the 5th of October, on a "lay-over ticket," given to him for that purpose, and proceeded to Brighton, a distance of thirty miles, where he remained five days, and from thence to Chicago, arriving on the 11th of October. On his arrival at that city, he showed his checks and demanded his baggage, which was not delivered.

It was shown, by the evidence, that it was the custom to place all unclaimed baggage, on its arrival at Chicago, in the company's warehouse, which is proven to have been a very secure one. There can be no doubt the baggage of appellee, when it arrived, there being no one to claim it, was placed in this warehouse to await the owner's convenience, where it was destroyed by fire on the 8th of October, 1871, without any fault on the part of the company.

Under instructions from the court, the jury found a special verdict, in which they enumerate the several articles which they find were contained in the trunk, and then find their respective values. The list contains several articles, the value of which was included in the verdict, and which could not, with any degree of accuracy, be said to constitute any part of a gentleman's traveling baggage—such as "one sacque and muff," "two silver napkin-rings," and perhaps some other articles, the whole amounting, in the aggregate, to something over $40. To this extent, the finding of the jury, in any view of the law that can be taken, is erroneous.

But this is not the principal question in the case. Another objection taken is as to the law given to the jury, and it goes to the foundation of the action. The baggage having arrived at its destination, and no one appearing to claim it, the company caused it to be placed in its warehouse, or baggage-room. The question arises as to the responsibility of the company after its arrival, and before it was called for by the owner.

The law is well settled that the responsibility as carrier

ceases when the carrier becomes a mere warehouseman, and from thenceforward he is bound to exercise the same care, and no more, that ordinarily prudent men do in keeping their own goods of similar kind and value. While the relation of common carrier exists, the company is held responsible for baggage or freight as an insurer, and the reason given in the books is to prevent fraud, and the better to subserve the public interests.

But when does the liability of passenger carriers cease, and such carriers become mere warehousemen as to the luggage of passengers?

The rule is, as stated by text-writers, that the responsibility continues until the owner has had reasonable time and opportunity to come and take away his baggage. If it be not called for within such reasonable time, the company may store it in a secure warehouse, and from thence its liability as a carrier ceases, and that of warehouseman is assumed. This doctrine is so well supported by authority that it admits of no controversy. 2 Redfield on Railways, sec. 171, sub. sec. 3; *Roth* v. *Buffalo and State Line Railroad Co.* 34 N. Y. 548; *Louisville, Cincinnati and Lexington Railroad Co.* v. *Mahan*, 8 Bush, 184; *Onimit* v. *Henshaw et al.* 35 Vt. 605.

The difficulty is not in the rule as stated, but in the determination of what is a reasonable time and opportunity for a passenger to claim and take away his luggage. The impossibility of stating any absolute rule on this subject has given rise to the apparent conflict in many of the adjudged cases. It has been said, and we think with great force, that what constitutes such reasonable time and opportunity is a mixed question of law and fact, depending very much upon the peculiar facts of each individual case; but when the facts are undisputed it is purely a question of law, and the court should decide it. *Louisville, Cincinnati and Lexington Railroad Co.* v. *Mahan; Roth* v. *Buffalo and State Line Railroad, supra.*

In the case we are considering, the court, at the instance of appellee, instructed the jury "that a reasonable time allowed the plaintiff to claim his baggage means such time as is rea-

33—73d Ill.

sonable, considering the state of his health, and his ability to proceed to his destination, or to make demand, and the other circumstances in the case proven."

This charge does not state the law correctly, as applicable to the facts of this case. Commonly the passenger and his luggage are carried on the same train, and it is delivered to him on the platform on his arrival. But if, for any reason, not the fault of the company, the passenger does not choose to claim it, the carrier may rightfully store it in a secure warehouse. This is not for the benefit of the carrier, but for the convenience of the traveler. It was never intended that passenger carriers should become warehousemen of the traveler's personal luggage. The common custom is to deliver it immediately upon its arrival at its destination, on the platform. It would be extending the liability of such carriers beyond anything required by public exigency, or the necessities of public interests, to hold them responsible as common carriers after the lapse of reasonable time, or after the traveler has had a reasonable opportunity to claim and take away his personal baggage, and unless the carrier itself is at fault, it seems to us the passenger ought not to be permitted to extend the strict and rigid liability incident to common carriers, for any purposes of his own convenience, nor by reason of any inevitable accident to himself. The carrier never contracted to carry him as a passenger with a view to such extended liability for his baggage.

It is sought to justify the giving of the instruction upon the facts testified to by appellee, that his journey was delayed on account of sickness. The company, it is contended, consented to the delay by giving him a " lay-over ticket." It was under no legal liability to give him such a ticket, and it was done for the humane purpose of accommodating the passenger. He was physically unable to prosecute his journey. This was certainly no fault of the company, and if the carrier was willing to oblige him in his extremity, its responsibility ought not, for that reason, to be enlarged. Had his sickness continued for any considerable period, it seems unreasonable that the company, during all the time it should be compelled in consequence

thereof to keep his luggage in its warehouse, should be held to the strict and rigid liability of a common carrier. We think the objection to this evidence offered by appellee ought to have been sustained; its production could only mislead the jury; it did not tend to show it was through any neglect or default of the company that it was compelled to place appellee's luggage in its warehouse; and if it proves anything, it is that the company gave him the "lay-over ticket" on the implied condition the passenger would consent that the carrier might place his baggage, on its arrival, in its warehouse, using ordinary care for its preservation. This fact would relieve the company from all responsibility as a common carrier. Had the passenger been at Chicago, and for his personal convenience had his baggage placed in the company's warehouse, this fact would relieve the carrier from all responsibility except for gross carelessness as a gratuitous bailee. *Minor* v. *Chicago and Northwestern Railroad Co.* 19 Wiscon. 40.

The case of *Roth* v. *The Buffalo and State Line Railroad Co. supra*, cited by counsel for appellee, as supporting his view of the law, is not in conflict with the views here expressed, so far as the decision itself is concerned. The judge who delivered the opinion of the court stated some hypothetical cases which might arise in the future, to which the principles of that decision should not apply. It was simply a passing remark, not the deliberate opinion of the court, and for that reason we are not inclined to give it the weight of an authoritative decision.

We are satisfied the verdict in this case is contrary to the law and the evidence, and the judgment will accordingly be reversed.

*Judgment reversed.*