HŒGER and another, Appellants, vs. THE CHICAGO, MIL-WAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

*April 1 — April 28, 1885.*

CARRIERS. *(1) Merchandise carried as baggage: Estoppel. (2) When liability as carrier ceases: Warehouseman.*

1. A traveling agent applied to a railroad company to transport his sample-trunks as baggage, and the company, knowing their contents, received them and checked them as his baggage, and carried them as such on the passenger train on which he rode. *Held*, that both parties are estopped to claim that such trunks were not baggage, and to be treated as such, and not as ordinary freight.

2. The liability of a railroad company, as a common carrier, for a passenger's baggage, ceases after such baggage has arrived at its destination and been there kept upon the platform or other customary place of delivery a sufficient time for the duplicate checks to be presented and the baggage claimed. Thereafter it is liable only as a warehouseman.

APPEAL from the Circuit Court for *Milwaukee* County. The case is thus stated by Mr. Justice CASSODAY:

"This is an action against the defendant, as a common carrier, for damages for the loss of goods burned up in its passenger depot, at Hastings, Minnesota. The jury was waived, and the case was tried by the court, which found the facts as stipulated, and to the effect that, during the times in

question, the plaintiffs were copartners and merchants, doing business at Milwaukee; that they sold goods by sample through traveling agents or salesmen at various towns and cities throughout Wisconsin, Minnesota, and other states; that on Saturday afternoon, March 1, 1884, one Dilg, traveling agent of the plaintiffs, applied to the defendant's baggage agent at Red Wing, Minnesota, to have three trunks, containing samples of the goods sold by him for the plaintiffs, checked in the usual and ordinary way in which baggage is checked, for transportation on a passenger train then about leaving Red Wing for Hastings; that at the time of such application Dilg presented to said baggage agent a railroad ticket or other evidence of his right to be carried as a passenger from Red Wing to Hastings on that train; that the baggage agent thereupon received said trunks for transportation and placed them in the baggage car of said passenger train in the usual and customary way in which ordinary baggage is placed in said car, with the knowledge of Dilg, and as evidence thereof then and there delivered to him three certain brass baggage checks, numbered respectively 42,015, 36,155, 42,595, of the usual form and size as are given to passengers with regular baggage, and the duplicates thereof were attached to said trunks respectively; that the trunks and their contents weighed more than 200 pounds; that under the rules and regulations of the defendant, Dilg was entitled to free passage for 200 pounds of baggage by virtue of his ticket as a passenger, and for the excess of that amount he was to pay the defendant, on the delivery of the trunks to him at the place of destination, the charge according to the then-established tariff rate for the carriage of excess baggage; that in pursuance of that agreement Dilg took passage on said train, and said trunks were safely carried in the baggage car on said train, on that same afternoon, from Red Wing to Hastings, where they arrived between 8 and 9 o'clock that even-

ing; that upon such arrival the trunks were safely delivered from said baggage car upon the platform of the depot, and remained there a sufficient length of time for Dilg to have applied for and taken them away, and were ready for delivery to Dilg or any other person who should present said checks and pay the excess of baggage charges thereon, and were thereafter, according to the custom and practice of the defendant, placed in the baggage-room of the depot, and remained there in good order and condition until about 3 o'clock the next Monday morning, when the depot building, together with the three trunks and contents, were destroyed by fire, not happening by any negligence of the defendant or its servants; that Dilg knew the trunks were on the train with him, and that, on the arrival of the train at Hastings, the trunks would be taken out of the car and placed on the depot platform, as stated; that Dilg did not stop off at Hastings, and made no arrangements with any of the defendant's agents as to the retention and storage of the trunks, but retained the checks and went to Minneapolis on the same train, as a matter of convenience to himself, without the knowledge of the defendant's baggage agent at Red Wing or at Hastings, or of the person in charge of the trunks in the baggage car; that Dilg returned from Minneapolis to said depot at Hastings between 1 and 2 o'clock on Sunday afternoon, before the fire, and went directly to a hotel in Hastings and remained there, retaining the checks, until after the fire; that the usual and customary way in which Dilg removed said trunks from the depots to hotels was by either presenting or sending the baggage checks to the baggage agent of the defendant, and paying the excess baggage charges, and then having the trunks taken by an express-man or baggage-man, to the hotel which he might designate; that upon the arrival of said trains, respectively, at the depot at Hastings, there were express-men or baggage-men present, ready, willing,

and prepared to carry any sample cases from the depot to the hotel, or to any other place in Hastings; that if Dilg had, on the arrival of either of said trains, presented the checks and paid such excess charges to the defendant's baggage agent there, or had some express or baggage man do the same, the trunks would thereupon have been delivered to the plaintiffs, or such express or baggage man for him; that the value of the plaintiffs' goods so burned was $604, which the plaintiffs were entitled to recover, if anything.

"As conclusions of law, the court found, in effect, that the plaintiffs were not entitled to recover anything, upon the facts stated, and that judgment be entered in favor of the defendant and against the plaintiffs, dismissing their complaint, with costs to be taxed. From the judgment entered thereon the plaintiffs appeal."

For the appellants there was a brief by *Johnson, Rietbrock & Halsey,* and oral argument by *Mr. Johnson:* Sample cases, known to the carrier to be such, are not baggage. Thompson on Carriers, 511; *Hawkins v. Hoffman,* 6 Hill, 586; *Stimson v. C. R. R. Co.* 98 Mass. 83; *Alling v. B. & A. R. Co.* 126 id. 121. The custom of carrying them in baggage cars does not change their nature as freight, nor the liability of the carrier for its safety, nor the rule as to the delivery of the freight and its removal by the owner or consignee. *Hannibal Railroad v. Swift,* 12 Wall. 262; *Sloman v. G. W. R. Co.* 67 N. Y. 208; *Stoneman v. Erie R. Co.* 52 id. 429; *Minter v. Pacific R. Co.* 41 Mo. 503; *Butler v. H. R. R. Co.* 3 E. D. Smith, 571. In the case of freight carried as such the owner has a reasonable time within which to remove it after notice of its arrival, and in the mean time the carrier's liability as insurer continues. *Wood v. Crocker,* 18 Wis. 345; *Lemke v. C., M. & St. P. R. Co.* 39 id. 449; *Stephenson v. U. S. Exp. Co.* 21 id. 405.

For the respondent there was a brief signed by *John W. Cary* and *D. S. Wegg,* attorneys, and *Burton Hanson,* of counsel, and the cause was argued orally by *Mr. Wegg.*

CASSODAY, J.   Which party must suffer the loss of the trunks and their contents, upon the facts stated? The counsel for the plaintiffs frankly concedes that if the trunks and their contents are to be regarded as baggage, and the stringency of the defendant's liability, after the trunks arrived at Hastings, is to be no greater than in the case of ordinary baggage, then that there can be no recovery. With equal frankness the counsel for the defendant concedes that if the trunks and their contents are to be regarded as freight, and the stringency of the defendant's liability, after the trunks arrived at Hastings, is to be the same as in the cases of ordinary freight, then that the defendant is liable.    The learned counsel on both sides assert that there is no reported case involving the precise question here presented. With faith in the fidelity of their research, and a clear conviction as to what the law in such cases ought to be, and, as we think, is, we have made no attempt to examine through the multitude of cases bearing upon the question, in verification of their assertion. Had the defendant failed to deliver the trunks at the depot in Hastings, and had they been destroyed in transit, or carried elsewhere and lost, then the defendant might have been liable for their value as a common carrier.

Dilg having engaged the defendant to transport the trunks as his baggage, and the defendant, knowing their contents, having received and checked them as his baggage, and Dilg and the trunks having been carried from Red Wing to Hastings on the same passenger train, we must, under the facts stipulated and found, hold that both parties were, by their contract, conclusively estopped from claiming that the trunks were not to be carried as baggage, or that they were not to be received, treated, and cared for on their arrival at Hastings as baggage, and not as ordinary freight. In one portion of the opinion in the recent case of *Texas, etc., R. Co. v. Capps*, 23 Am. Law Reg. 377, not cited by counsel, this proposition is asserted so far as estopping the railroad

company. But it is well established that estoppels, to be binding, must be mutual.

Under that contract the defendant was bound to safely carry the trunks and their contents to the passenger depot at Hastings, and there place them upon the platform or other customary place of delivery, and keep them there for a sufficiently reasonable length of time for the duplicate checks to be presented and the trunks claimed. *Patscheider v. G. W. R. Co.* L. R. 3 Exch. Div. 153; *Dininny v. N. Y. & N. H. R. Co.* 49 N. Y. 546; *Ouimit v. Henshaw,* 35 Vt. 605; Hutchinson on Carriers, §§ 707–710; Thompson on Carriers, notes, p. 534, § 22. It stands confessed that this duty of the defendant was fully performed. Being performed, its duty as a common carrier of baggage ended, and its duty as a bailee for hire or a warehouseman began. Hutch. Carr. §§ 707–710; Thompson on Carriers, notes, pp. 534, 535, § 23; *Roth v. B. & S. L. R. Co.* 34 N. Y. 548; *Louisville, C. & L. R. Co. v. Mahan,* 8 Bush, 184; *C., R. I. & P. R. Co. v. Boyce,* 73 Ill. 510; *Texas, etc., R. Co. v. Capps, supra.* That duty required the defendant to then place the trunks in a proper and suitable baggage-room, and then exercise ordinary care and diligence in safely keeping them there. These things were done. The destruction by fire being without the fault or negligence of the defendant, there was no liability.

*By the Court.*— The judgment of the circuit court is affirmed.