KANSAS CITY, FORT SCOTT & MEMPHIS RAILWAY COMPANY *v.* McGAHEY.

Opinion delivered January 9, 1897.

BAGGAGE DEFINED.—Baggage is whatever the passenger takes with him for his personal use or convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or to the ultimate purposes of the journey.

BAGGAGE—LIABILITY of CARRIER.—When a passenger, in presenting his goods to a carrier for transportation, either informs the carrier that they are not such as are usually carried by passengers, or that fact is apparent from the outward appearance of the packages, and the carrier receives and carries them as baggage, he will be responsible for them as baggage, notwithstanding he was not bound to receive them as such.

SAME—WHEN CARRIER'S LIABILITY ENDS—The liability of a carrier as insurer of the baggage of a passenger continues until the baggage is ready to be delivered to the owner at the place of his destination, and until he has a reasonable time and opportunity to take it away. If it be not called for in a reasonable time, the carrier may store it in a secure warehouse, when it becomes a mere warehouseman.

SAME—REASONABLE TIME FOR REMOVAL.—Where a railway passenger reaches his destination at 11 o'clock p. m., and leaves his baggage at the depot, the lateness of the hour of arrival, and the fact that there were no vehicles at the depot by which the baggage could have been removed, were not sufficient to extend the time within which the passenger should call for the baggage until the next morning.

SAME—WHEN CARRIER LIABLE AS WAREHOUSEMAN.—Where a passenger fails to remove his baggage within a reasonable time after arriving at his destination, and it is destroyed by fire, it is necessary, before he can recover of the carrier for its loss, that he should show such negligence on the part of the carrier as would make it liable as warehouseman.

Appeal from Sharp Circuit Court, Northern District.

JOHN B. McCALEB, Judge.

*Wallace Pratt* and *Olden & Orr* for appellants.

Defendant's relation to the baggage, at the time it was destroyed, was that of warehouseman, and not that of common carrier, and, without proof that the fire was occasioned by negligence of defendant, plaintiff could not recover. Hutchinson, Carriers, secs. 707, 713; 50 Barb. 193; 49 *id.* 148; 56 *id.* 191; 3 Daly, 162, 390; 8 Bush (Ky.), 184; 18 S. W. Rep. 850; 4 Mo. App. 582; 17 S. W. Rep. 135; 35 Vt. 695; 2 Civ. Ct. App. Tex. 35; 24 S. W. Rep. 668; 139 Mass. 423; 19 Wis. 40; 53 Ill. 227; 73 *id.* 510; 17 Ill. App. 632; 63 Wis. 100; 1 Daly (N. Y. C. P.), 202. Even adopting the New Hampshire rule as to the delivery of freight by carriers, there is no liability here. 32 N. H. 523; 44 N. Y. 505.

2. Under the pleadings and evidence, defendant is not liable for the *household* goods, as baggage. Baggage, at common law and even under our statute, does not include articles not usually carried for use, comfort, or convenience on the trip. Sand. & H. Dig., sec. 6215; 4 Burrows, 2298; 4 Barn. & Ald. 21; 5 Cush. 69; 10 *id.* 506; 98 Mass. 83; 126 Mass. 121; 127 *id.* 322; 6 Hill, 586;

9 H. L. Cases, 556; 29 Minn. 160; 70 Cal. 169; 73 Ill. 348; 17 Ill. App. 321; 6 Q. B. 612.   For illustrations, see 3 Tex. App. 25; 1 *id.* 224; 32 U. C. Q. B. 66; 73 Ill. 510; 106 Mass. 146; 56 Ill. 293. · There is no allegation nor proof that the agent knew or was informed of the contents of plaintiff's trunks and boxes, so as to bring it within the rule of 30 S. W. (60 Ark.) 764.   The mere payment of extra compensation on account of overweight of baggage does not convert it into freight.   127 Ill. 598; 22 S. W. (Tex.) 1011.

*Phillips & Horton* for appellee.

Whatever the passenger takes with him for his personal use or convenience, according to the habits or wants of the particular class to which he belongs, either with reference to his immediate necessities, or the *ultimate* purpose of his journey, must be considered as personal baggage. · 1 Am. & Eng. Enc. Law, 1042.   If appellant had knowledge that the package contained other than personal baggage, or if the articles were so packed that their nature was obvious, it is estopped to deny that it was baggage.   41 Mo. 503; 52 N. Y. 429; 67 N. Y. 208; 32 Kas. 55; 104 Ind. 293; 16 Am. & Eng. R. Cases. 120; 46 N. W. Rep. 456, and cases cited; 21 Am. & Eng. R. Cas. 286.   See also 60 Ark. 433. · The rule adopted in 60 Ark. 375 as to freight should apply to baggage.   59 N. W. Rep. pp. 257, 258; 8 Bush. (Ky.), 184.

Baggage defined.   · BATTLE, J. · "Baggage," as defined by Lord Chief Justice Cockburn in *Macrow* v. *Great Western Railway Co.*, L. R. 6 Q. B., 612, is "whatever the passenger takes with him for his personal use or convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or to the ultimate purpose of the journey." As said by Mr. Justice Field in *Hannibal Railroad*

v. *Swift*, 12 Wall. 272, the contract of the carrier to carry a passenger, as to baggage, "only implies an undertaking to transport such a limited quantity of articles as are ordinarily taken by travelers for their personal use and convenience, such quantity depending, of course, upon the station of the party, the object and length of his journey, and many other considerations." Under the statutes of this state, "each passenger who shall pay fare * * * * shall be entitled to have transported along with him, on the same train, and without additional charge, one hundred and fifty pounds of baggage, to consist of such articles as are usually carried by ordinary persons when traveling." Sand. & H. Dig., sec. 6215. With the exception of the amount of the baggage, the statute is substantially the contract of the carrier with the passenger, as stated in *Hannibal Railroad Co.* v. *Swift, supra.*

What is baggage, within the rule of the carrier's liability, is often difficult to determine. It depends, as already stated, in a great measure upon the condition in life of the passenger, and the length, nature, and object of his journey. According to this criterion, the following articles have been held to constitute baggage: the wearing apparel of the passenger in all cases; the easel of an artist on a sketching tour; the gun or fishing tackle of the sportsman when on a hunting or fishing excursion; the costly laces of a lady of wealth, high rank and social standing, traveling on a railway; "a manuscript price book, which a commercial agent took in his valise, and used in making sales;" the surgical instruments of a surgeon in the army, traveling with troops; a few books carried for amusement or entertainment; and the manuscript books of the passenger used in the prosecution of his studies. Many cases upon this subject have been collected in a valuable treatise by

Judge U. M. Rose upon the "General Liability of Carriers of Passengers for Baggage," in 2 Am. & Eng. R. Cases, (N. S.) 1.

When carrier liable for baggage.

When a passenger presents to the carrier for transprtation his goods and chattels, and makes known what they are, or exposes them to view, or packs them in a way to give to any one concerned good reason to understand and know that they are not usually carried as baggage, and demands transportation of them as his luggage, and the carrier receives and carries them accordingly, he will be responsible for them as baggage, notwithstanding he was not bound to accept and transport them as such. If he wishes to avoid responsibility for them as baggage, he must refuse to receive them in that way. *Railway Co.* v. *Berry*, 60 Ark. 433; *Minter* v. *Pacific Railroad Co.*, 41 Mo. 503; *Sloman* v. *Great Western Railway Co.*, 67 N. Y. 208; *Great Northern Railway Co.* v. *Shepherd*, 8 Exch. 30; *Mauritz* v. *N. Y., Lake Erie & Western R. Co.*, 21 Am. & Eng. R. Cases, 286; *Waldron* v. *Chicago & N. W. R. Co.*, 46 N. W. Rep. 456; *Oakes* v. *Northern Pacific R. Co.*, 47 Am. & Eng. R. Cases, 437; *Hannibal Railroad* v. *Swift*, 12 Wall. 262; *Texas, etc., R. Co.* v. *Capps*, 16 Am. & Eng. R. Cases, 118; *Hamburg-American Packet Co.* v. *Gattman*, 127 Ill. 598.

In *Railway Company* v. *Berry*, 60 Ark. 433, this court held "that where a passenger, who is ignorant of the rules or instructions of railway companies forbidding agents to receive money for transportation as baggage, delivers to the baggage agent more money than the carrier is required to transport, and informs the agent of the amount (it being inclosed in the baggage, and concealed from view), if he accepts it to ship as baggage, and a loss occurs, the carrier's common-law liability will attach."

In *Minter* v. *Pacific Railroad*, *supra*, a passenger delivered his trunk and a piece of carpet to the baggage master of a railroad company. The carpet was exposed to view. The passenger received a check for the trunk, but was told that none was necessary for the carpet, as it would go safely. The carpet was lost, and a suit was brought for the recovery of its value. The court held that, inasmuch as the railroad company had received and treated the carpet as personal baggage, it was liable for the loss of it, although, by the printed rules of the company, the baggage master was forbidden to receive as passenger's baggage articles of merchandise.

In *Sloman* v. *Great Western Railway Co.*, *supra*, the plaintiff's son, a lad eighteen years of age, was employed by him as traveling agent to sell goods by sample. He had two large trunks containing the samples, and a valise for his personal baggage. The trunks did not present the appearance of ordinary traveling trunks. They were thirty inches long, twenty-seven deep and twenty-four wide. One was covered with oil-cloth, and the other was of wood. "He delivered the trunks to a baggage master at a railroad depot, and, when asked where he wanted them checked to, replied that he did not then know, as he had sent a dispatch to a customer at Fentonville to know if he wanted any goods; if not, he wanted them to go to Rochester, where he expected to meet some customers. Soon after he had them checked to Rochester, paying two dollars, and receiving a receipt ticket for them, headed 'Receipt Ticket for Extra Baggage and Dogs.' The court held that the jury were authorized by these facts to infer that the baggage master understood that the agent was traveling for the purpose of selling goods, and that these trunks contained his wares; and that he was not entitled to have them carried as ordinary baggage; and further held that the railroad company, having this

notice, was responsible for the loss of the trunks and their contents."

Some courts hold that where a railroad company receives for transportation property which it is not bound by its contract with the passenger to transport as personal baggage, of which it has notice, it must be considered to assume, with reference to such property, the liability of a common carrier of merchandise (*Hannibal Railroad* v. *Swift, supra; Sloman* v. *Great Western Railway Co., supra*); while others say that, if it received the property, under such circumstances, as baggage, it will be responsible therefor as a common carrier, and will be estopped from denying that it was baggage.    *Texas & P. R. Co.* v. *Capps*, 16 Am. & Eng. R. Cases, 118; *Minter* v. *Pacific R. Co.* 41 Mo. 503; *Hoeger* v. *Chicago, M. & St. P. R. Co.* 63 Wis. 100, 21 Am. & Eng. R. Cases, 308; *Chicago, R. I. & P. R. Co.* v. *Conklin*, 32 Kas. 55, 16 Am. & Eng. R. Cases, 116; *Butler* v. *Hudson River R. Co.* 3 E. D. Smith (N. Y.), 571; *Railway Company* v. *Berry*, 60 Ark 433.    It seems to us the latter view is sustained by the better reason and weight of authority.    But, be that as it may, the liability of the carrier for loss and damage in transportation in either case is the same.

In the case under consideration, the plaintiff, McGahey, purchased for himself and his family, consisting of a wife and three small children, three tickets, which entitled him to transportation for himself and family and 450 pounds of baggage over the railway of the defendant railroad company from Sulligent, in the state of Alabama, to Mammoth Springs, in this state. He delivered to the company his baggage, which was contained in two trunks and three boxes, and weighed over 500 pounds, and paid the usual rate for the weight in excess of his baggage allowance, and received checks

for the trunks and boxes, which contained property of the following description and value:

"Four feather beds 40 lbs. each at 40 cts....$ 64 00
Ten pillows 4 lbs. each, at 40 cts......... 16 00
Forty-five quilts at $5 each............... 225 00
Three pairs of blankets at $5............. 15 00
Three bed ticks at $2..................... 6 00
Five double woven counterpanes at $6..... 30 00
Fourteen bed sheets at 50 cts............ 7 00
Thirty pillow slips at 15 cts............ 4 50
Eight dresses (ladies') $2................ 16 00
Thirty dresses (children's)........ ⎫      30 00
Twenty-five shirts and underwear.. ⎪      12 00
Twenty articles underwear, ladies' ⎬ Estimate 12 00
Twelve pairs socks................. ⎪      1 80
Twenty-five yards cloth............ ⎭      3 60
Razor hone............................... 1 50
Knitting yarn ........................... 1 50
Three suits clothing..................... 24 00
Two pairs pants.......................... 2 00
Four cotton shirts ...................... 2 00
Four pairs drawers (gents').............. 1 60
Two razors .............................. 3 00
Two pairs shoes (ladies')................ 2 50
Five table cloths ....................... 3 00
Eight hand towels........................ 2 00
One lot of pictures (photographs)........ 10 00
One lot carpenter tools.................. 5 00
Seven books.............................. 2 70
Set knives and forks..................... 1 00
One clock ............................... 1 25
Six buckets and two flat irons .......... 2 00
                                        ―――――――
    Total amount......................$508 95"

The trunks were of the aggregate value of five dollars. From this description of the trunks and boxes

and their contents, it is evident that the trunks and boxes must have been of a size very much larger than was necessary to hold the ordinary luggage of the number of persons entitled to transportation on three tickets would amount to. It is highly improbable that the plaintiff would carry with him such large trunks and boxes for the purpose of carrying such personal effects of himself and family as he was entitled to have carried as baggage on three tickets. The effects contained in the boxes were thereby packed in such a manner as to indicate that they were not carried as necessary personal baggage to be used on the journey, but as merchandise would be when it reaches its place of destination. From all these circumstances, we think that the judge, sitting as a jury, as he did in this case, was authorized to infer that the company was put upon notice, and given to understand, that the trunks and boxes contained more than the ordinary baggage, and that it accepted and treated the contents, without regard to what they might be, as baggage, and transported them accordingly.

**When carrier's liability ends.** Railroad companies are responsible as common carriers for the baggage of their passengers. Such responsibility continues until the baggage is ready to be delivered to the owner at the place of his destination, and until he has had a reasonable time and opportunity to come and take it away. If it be not called for in a reasonable time, the company may store it in a secure warehouse, when it becomes a mere warehouseman, and is thenceforward bound to exercise the same care, and no more, that ordinarily prudent men do in keeping their own goods of similar kind and value. *Mote* v. *Chicago & N. W. R. Co.*, 27 Iowa, 22; *Chicago, R. I. & P. R. Co.* v. *Boyce*, 73 Ill. 510.

What constitutes a reasonable time and opportunity for a passenger to remove his baggage is, ordinarily, a mixed question of fact and law. When the facts are in

dispute, the jury should decide, under the instructions of the court as to the law; otherwise, it is a question of law, and the court should decide it. *Chicago, R. I. & P. R. Co.* v. *Boyce,* 73 Ill. 510; *Louisville, C. & L. R. Co.* v. *Mahan,* 8 Bush, 184; *Roth* v. *Buffalo & S. L. R. Co.,* 34 N. Y. 548.

No absolute rule on this subject can be stated. In determining whether a passenger has had a reasonable time in which to receive and remove his baggage, "the customs of the railway and of the station, the manner of transporting baggage therefrom, in short, the peculiar circumstances surrounding each case," except as hereafter stated, must be considered. *Mote* v. *Chicago & N. W. R. Co.,* 27 Iowa, 22.

In many places, especially in cities, transportation for baggage can be procured immediately upon its arrival by railroad trains and steamboats. If such places be its destination, it is the duty of the passenger to present his check and receive it, on its arrival by train or steamboat, or as soon thereafter as the checks can reasonably, under the circumstances, be presented, and the baggage delivered. If he refuses or neglects to do so, the liability of the carrier is changed from that of an insurer to the responsibility of a warehouseman. *Roth* v. *Buffalo & State Line R. Co.,* 34 N. Y. 548; *Ouimit* v. *Henshaw,* 35 Vt. 605.

"The passenger, however, cannot extend the strict and rigid liability of common carriers as insurers by postponing the time of taking possession of his baggage for his own convenience on account of its arrival at a late hour of the night, or his peculiar circumstances. In *Chicago, Rock Island & Pacific Railroad Co.* v. *Boyce,* 73 Ill. 510, it was held that the fact that a passenger on a railroad is taken sick, and is given a lay-over ticket, so that he does not reach his destination as soon as his

baggage, will not have the effect of extending the liability of the carrier as insurer beyond what it would otherwise be.''

As to reasonable time for removing baggage. In the case before us the plaintiff and his baggage arrived at Mammoth Springs, their place of destination, at 11.08 o'clock at night. There were no conveyances at the depot, or running at that hour. They were in the city, ''a mile's distance from the defendant's depot.'' The plaintiff, although he saw his baggage on the platform, made no demand for it during the night of its arrival, but left it in the possession of the defendant, who stored the same in its warehouse, which was destroyed with the baggage by fire about one o'clock that night.

According to the evidence, it appears that plaintiff had a reasonable time in which he might with the use of diligence have received and removed his baggage before the fire occurred. There is no excuse given for his failure to do so, except the lateness of the hour, and the fact that no vehicles were at the depot or ''running'' that night, by which it could have been removed. This merely shows that it was inconvenient for him to remove it during the night. This, in the absence of a better showing, was not sufficient to extend the reasonable time within which the plaintiff should call for it to the next morning, so that, it not being called for, the defendant became liable for its custody as a carrier. ''If it was not the usual course of business for the defendant to deliver baggage immediately on the arrival of the train at that late hour of the night, or if the railroad company detained the plaintiff's baggage for their own convenience upon the arrival of the train, such facts should have been shown by the plaintiff, and, if shown, might vary the defendant's liability for the custody of the property. But we cannot presume such facts to exist.'' *Ouimit* v. *Henshaw*, 35 Vt. 616.

The defendant company not being liable as common <span style="float:right">Liability as warehouseman.</span> carrier for the loss of the baggage of plaintiff, before he could recover on account thereof, it was necessary for him to show that the fire was the result of such negligence of the railroad company as would make it liable as a warehouseman for hire, which he failed to do.

Reversed and remanded for a new trial.