YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.*
GEORGIA HOME INSURANCE COMPANY.

COMMON CARRIER.    *Passenger's baggage.    Business papers.    Principal and
agent.*

Papers relating to the business of his principal, placed by an agent
in his trunk and carried solely for the purposes of his princi-
pal's business, are not baggage, and in the absence of the con-
sent of a common carrier of passengers to accept them as bag-
gage, there being no custom to do so, damages cannot be recov-
ered either for loss, or delay in the carriage, of such papers.

FROM the circuit court of Warren county.

HON. GEORGE ANDERSON, Judge.

Dana Blackmar, suing for the use of the Georgia Home In-
surance Company, appellee, was plaintiff in the court below;
the Yazoo & Mississippi Valley Railroad Company, appellant,
was defendant there.    From a judgment in plaintiff's favor the
defendant appealed to the supreme court.

Blackmar was the special agent and inspector of the Georgia
Home Insurance Company, and on July 1, 1903, purchased a
ticket over the Yazoo & Mississippi Valley Railroad from
Natchez, Miss., to Baton Rouge, La., both points being on said
railroad.    He checked his trunk to Baton Rouge.    The trunk
contained his wearing apparel and all the papers pertaining to
his business.    The trunk was not delivered at Baton Rouge
promptly, and Blackmar left there with instructions to the
railroad agent at that point to send the trunk to New Orleans.
The trunk was delayed, and was not delivered to Blackmar in
New Orleans until July 11th.    Plaintiff claimed that the de-
lay in the delivery of the trunk caused Blackmar to lose six
days' time, and to pay a hotel bill for six days, and to pay $2
for telegrams in his effort to recover the trunk.    The Georgia
Home Insurance Company brought this suit in a justice of
the peace's court in the name of said Blackmar, for its use, to

recover $10 per day for the six days lost by Blackmar, this being the amount paid him as salary; the sum of $36, hotel bills, which it had to pay for Blackmar; and other expenses, $2; and recovered a judgment for the amount sued for—in all, $98. Defendant appealed to the circuit court, and plaintiff recovered a judgment there for the same amount. Defendant's motion for a new trial was overruled.

*Mayes & Longstreet,* and *J. M. Dickinson,* for appellant.

The extensive and valuable insurance papers, which presumably were· copies of policies, proofs of loss, reports and estimates, were in no sense the property or personal effects of Dana Blackmar, the passenger, and were in no sense "baggage." The definition of·"baggage" given in the case of *Mississippi, etc., R. R. Co.* v. *Kennedy,* 41 Miss., 678,·is a proper and sufficient definition, and one that is today the definition supported by the great weight of authority.

The agreement of facts expressly states: "It is further agreed that neither the agent who sold the ticket to said Black-mar, nor the baggage man by whom said trunk was checked, nor any other agent or employe of defendant, had any knowledge or reason to believe that said Blackmar was such agent or employe of the Georgia Home Insurance Company. Nor did said baggage man, nor any other employe of defendant, have any knowledge or information as to the contents of said trunk."

Here is an express statement that the company did not know, and did not have any reason to know or to infer from any statement or fact connected with the purchase of the ticket or the checking of the baggage, that the small trunk contained many papers belonging to the insurance company, and which were of great value and indispensable to said company in the prosecution of the said business of the adjustment of its losses in the southern territory in this section.

In the growth of the law the courts, in the definition of the

term "baggage," have held that in some instances railroad companies are liable for the loss of some articles not strictly the personal effects of the passenger, but merchandise belonging to his principal, such as the samples of a commercial traveler, but they have based these decisions on the idea that the railroad companies, according to the practice of carrying drummers and their trunks, and by reason of their habit to charge excess baggage rates on excess of such baggage, have nominally consented to and accepted such shipments, and that by the usage in connection with such business they will not be permitted to say that the articles were merchandise, and not the personal effects of the drummer.

The lower court evidently applied this principle to the facts of this case, but how very different is the case itself! Here a traveler, with nothing about him or his transaction with the railway company to put the carrier on notice, tenders a trunk containing his own personal belongings, but which also contains a large quantity of valuable documents belonging to his employer, with no notice to the company, and nothing to charge them with knowledge, nor to estop them from any defense!

In 6 Cyc., 69, the rules which apply in defining "baggage," and the many authorities of the courts in relation thereto, are given. This most excellent authority states: "If merchandise is checked under the form of baggage or mingled with articles of baggage without the carrier's knowledge, he is not liable therefor." And citing many authorities.

Our own court, in the case of *Mississippi, etc., R. R. Co. v. Kennedy, supra,* declares that passengers offering baggage for shipment shall not subject the carrier to unknown hazards, and that it is the duty, impliedly, of the owner of the baggage to make known its contents when they are different from the ordinary and usual personal effects or of any special importance, and that unless such special information is given, the withholding of the information is such a concealment as defrauds the carrier and exonerates him from liability.

Again, in *Michigan Central R. R. Co.* v. *Carron,* 24 Am. St. Rep., 248, the court says: "A traveler who presents to a carrier of passengers, as his baggage, an ordinary trunk or valise, without describing its contents, impliedly represents that it contains only wearing apparel, and articles such as are necessary for his comfort and convenience on the journey." See also *Davis* v. *R. R. Co.,* 74 Am. Dec., 151; *Doyle* v. *Kiser,* 6 Ind., 242.

*McLaurin, Armistead & Brien,* for appellee.

This is a suit for damages sustained by appellee on a breach of contract because of the loss of time enforced on appellee's agent by reason of the inexcusable delay of appellant in delivering his trunk. It is not a suit for the value of anything lost called baggage, whether properly so called or not; it is a suit for damages for the value of the use of certain papers during their delay. *G. C. & S. F. R. R. Co.* v. *Vancil,* 21 S. W. Rep., 303; *T. & P. R. R. Co.* v. *Douglas,* 30 S. W. Rep., 488.

In 4 Elliot on Railroads, 2631, it is stated: "Damages may be recovered in a proper case for delay as well as for loss or injury to baggage." In 3 Am. & Eng. Ency. Law, 584, 585, it is stated: "Expenses necessitated by loss or delay, as when he is subject to great delay in his journey, . . . . are within the measure of damages."

Our court designates the various articles as baggage which a passenger may carry along for his amusement, and it may be surely deduced that a passenger may in his trunk carry papers for his business purposes. It is further said in *Mississippi, etc., R. R. Co.* v. *Kennedy,* 41 Miss., 679: "The usual contract of a carrier of passengers includes an undertaking to receive and transport their baggage, though nothing be said about it, and if it be lost, even without the fault of the carrier, he is responsible. But this implied undertaking has never been extended beyond ordinary baggage, the value of which when lost is all that can be recovered, the action not being in tort, but for the breach of contract. The actual damage arising

from the breach is the measure of recovery in this form of action.   *New Orleans, etc., R. R. Co. v. Moore,* 40 Miss., 39."

Now, if Blackmar, appellee's agent, had a right to carry these papers of his master in his trunk for his business purposes, we submit that there is as much an implied contract on the part of the carrier, appellant here, to carry and deliver promptly this trunk containing these papers as there would be not to lose or destroy the articles themselves.   For the loss of articles the measure of damages would be the actual value; for the delay the measure would be the actual cost of the delay.

WHITFIELD, C. J., delivered the opinion of the court.

Perhaps the definition given by Chief Justice Cockburn in *Macrow* v. *Great Western Railway Co.,* L. R., 6 (Q. B., 622), is as accurate a definition of "baggage" as can be found.   That definition is this: "We hold the true rule to be that whatever the passenger takes with him for his personal use or convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or to the ultimate purpose of the journey, must be considered as personal baggage.   This would include not only all articles of apparel, whether for use or ornament, but also the gun case or the fishing apparatus of the sportsman, the easel of the artist on a sketching tour, or the books of the student, and other articles of an analogous character, the use of which is personal to the traveler, and the taking of which has arisen from the fact of his journeying.   On the other hand, the term 'ordinary luggage' being thus confined to that which is personal to the passenger, and carried for his use or convenience, it follows that what is carried for the purposes of business, such as merchandise or the like, or for larger or ulterior purposes, such as articles of furniture or household goods, would not come within the description of ordinary luggage, unless accepted as such by the carrier."   The sheets of paper constituting the

memoranda of the agent, Mr. Blackmar, are manifestly papers relating exclusively to the business of his company. We are unable to concur in the view that they can in any proper or legal sense fall within the legal definition of baggage. They are not such things as were for his personal use or his personal convenience. Their use was in no sense personal to the traveler. On the contrary, they were carried, distinctly and exclusively, "for the purposes of business," to quote the definition of Chief Justice Cockburn. They were not legally or properly put as baggage in his trunk, and, not being properly put there as baggage, no damages can be recovered for delay in their shipment in the trunk. It would therefore make no difference whether the suit was one brought for loss of these papers as constituting properly a part of the baggage of Mr. Blackmar or was one "for damages sustained by appellee on a breach of contract, because of the loss of time enforced on appellee's agent by reason of the inexcusable delay of appellant in delivering his trunk." Counsel for appellee say that the suit is of the latter character, and that learned counsel for appellant misconceive it as a suit of the former kind. But whether one or the other, if the memoranda are not properly baggage, nothing can be recovered as constituting the value of the memoranda, nor can anything be recovered as damages for delay in shipping. It must be said that the record is very vague and indefinite in giving an exact description of these memoranda, but it seems clear that the papers were the papers of the master, the insurance company, and not of this agent, and that they were not designed for his personal use or convenience or comfort, but strictly and distinctly as business papers in the transaction of the business of his master. We think it is clear, on a careful reading of the authorities cited on both sides, that no papers of the latter kind are in any proper or just sense baggage. And we understand this to be the doctrine as declared in *Miss. Central R. R.* v. *Kennedy,* 41 Miss., 678. The railroad knew nothing about these memo-

randa being in the trunk, and it is not a case where the railroad company has consented to receive or accepted these memoranda as baggage knowingly, or in accordance with any usage or custom of the railroad.   To hold these papers and documents—so important that their delay for a single day might involve a loss of from ten to fifty thousand dollars to the insurance company; papers and documents concededly the property of the company, and not of the agent; papers and documents which relate exclusively to the conduct of the business of the company, and which are in no way needed for the personal comfort, convenience, or use of the agent—constitute baggage, would be to expand the definition of baggage beyond anything warranted by any well-considered case.   We have carefully considered the two strongest cases cited by learned counsel for appellee—*Staub* v. *Kendrick* (Ind. Sup.), 23 N. E., 79 (6 L. R. A., 619), and *Gleason* v. *Goodrich Transportation Co.* (Wis.), 14 Am. St. Rep., 716—but we do not think either in point here.   In the Gleason case the book which contained the prices of all the component parts of Sheffield goods was the personal property of the agent, the suit there being for the value of the book specially as such; and so in the other case the suit, again, was for the value of an illustrated catalogue prepared by the agent himself, being his own personal property, estimated to be worth $50.   These cases are much the strongest cited by learned counsel for appellee, but we think the decisive weight of authority, as well as these cases properly considered, would exclude memoranda, such as those involved in this suit, from the category of personal baggage.   See *Mauritz* v. *N. Y.* (C. C.), 23 Fed., 765, and, for a valuable discussion, *Choctaw, etc.,* v. *Zwirtz* (Okl.), 73 Pac., 941.

*It follows that the judgment must be reversed and the case remanded for a new trial.   Reversed and remanded.*