NEW ORLEANS & NORTHEASTERN RAILROAD COMPANY v. LEE
SHACKELFORD.

[40 South. Rep., 427.]

RAILROADS.  *Baggage.  Sample case.  Loss.  Double damages.  Code*
1892, § 3569.

Where a railroad station agent knowingly checked a drummer's
sample case as baggage, the railroad company having so accepted
it a number of times during the two preceding years, and it was
lost, the railroad company:

(*a*) Is liable to the owner to the extent of its value; but

(*b*) Is not liable for double damages, under Code 1892, § 3569, pro-
viding that railroads shall pay double damages where they care-
lessly lose baggage.

FROM the circuit court of Lauderdale county.

HON. ROBERT F. COCHRAN, Judge.

Shackelford, the appellee, was plaintiff in the court below;
the railroad company, the appellant, was defendant there.  From
a judgment in plaintiff's favor, awarding him only a part of the
recovery sought, the defendant appealed to the supreme court,
and the plaintiff prosecuted a cross-appeal.  The facts are stated
in the opinion of the court.

*Fewell, Bozeman & Fewell,* for appellant and cross-appellee.

The fact that commercial travelers or others are accustomed
to carry merchandise in passenger trains without paying any
more than the usual price of the ticket for a passenger, even if
known to the carrier, will not render them liable for such mer-
chandise.  *Alling* v. *Boston, etc., R. Co.,* 126 Mass., 121 (s.c.,
36 Am. St. Rep., 667).

Shackelford was traveling on mileage, which is sold for less
than the straight ticket—that is, he was traveling at a reduced
rate.  Suppose, instead of cutlery, he had, in fact, been

carrying jewelry of immense value, would the railroad company have been responsible for its loss, knowing nothing as to the contents of the case being jewelry?

In the case of *Blumantle* v. *Fitchburg R. R. Co.,* 31 Am. St. Rep., 377, this is decided:

"A railway passenger had merchandise checked, without disclosing its character.    There was no evidence of any agreement to carry it as freight, nor that the baggage master had any authority to receive it as freight or as personal baggage.    Held, that the company was not responsible for its loss, although the baggage master knew the character of the baggage, and received similar packages from other passengers."

Appellee's counsel take great comfort in the decision of this court in the case of *Yazoo, etc., R. R. Co.* v. *Insurance Co.,* 85 Miss., 7 (s.c., 37 South. Rep., 500).    We cannot understand that case as giving any comfort to appellee, except as to certain dicta therein in which the court undertake to say that, upon proper notice, etc., given the carrier, it might be held responsible for merchandise, etc.    As we read the insurance company case, we interpret the holding of the supreme court as not favorable to the appellant's side of the case, but in all of the decisive positions in that case the decision is in favor of appellant in this.

*Miller & Baskin,* for appellee and cross-appellant.

This court, in the case of *Yazoo, etc., R. R. Co.* v. *Insurance Co.,* 85 Miss., 7 (s.c., 37 South. Rep., 500), use this language: "It is not a case where the railroad company has consented to receive or accept these memoranda as baggage knowingly, or in accordance with any usage or custom of the railroad." We understand the court to mean that the converse of the proposition would make it baggage—that is, if it had been the custom or usage of the railroad company to receive articles such as was sued for in the instant case, then the railroad company would

be estopped from denying that it was baggage, and it would follow that, having lost or destroyed the baggage, it would respond, as required by statute.

. The recent case of *Zeigler Bros.* v. *Mobile, etc., R. R. Co., ante,* 367, is a case where the drummer checked his sample trunks, and in which case Code 1892, § 3569, is quoted. We find the following language: "Section 3569 provides that if baggage be 'carelessly or willfully' injured or lost by improper handling or otherwise, the railroad company handling the same shall be liable to the owner in a sum 'not less than double the amount of actual damage.'" The language of the court, after quoting said statute, is as follows: "These mandates of the law evidence an intention of imposing not only a strict liability, but a high degree of care, upon railroad companies in handling the baggage of passengers. . . . The passenger produced his check for the baggage, and proved that it had not been delivered. This made out at least a *prima facie* case for appellant. This cast on appellee the burden of either producing the baggage or showing legal cause of exculpation from liability."

In the instant case, we show not only that Shackelford had his check, but that the railroad company sought him and told him that his baggage was destroyed, and asked for a statement of the contents of the baggage, which was given on or about April 22, 1905, and sent to the superior officers of the railroad company; that the railroad company failed, up to September 22, 1905, either to produce his baggage or to pay him anything for it, so that he was compelled to sue. And surely, when he is compelled to go to court in order to obtain his rights, he ought to have those that were given to him by the plain language of the statute—that is, the sum of $156.18. This is the least amount of damages that the jury could have found in his behalf, and the learned judge below had no right to deprive him of this judgment if the jury found in his behalf.

---

WHITFIELD, C. J., delivered the opinion of the court.

On April 22, 1905, Lee Shackelford, the appellee and cross-appellant herein, a drummer for the Melton Hardware Company, applied for and obtained from the agent of the appellant, the New Orleans & Northeastern Railroad Company, at Vossburg, Miss., a check for his sample case, having supplied himself with a thousand-mile ticket over said road, and, with his mileage ticket and a check for his sample case as baggage, he boarded the train of the said appellant to go from Vossburg to Pachuta. He arrived at Pachuta about twelve o'clock at night, and went afterwards in search of his baggage, which had been checked, and was met by the agent of the appellant railroad company at Pachuta and informed that his baggage had been destroyed or stolen, and was asked by the agent to give him the amount of the contents of the said baggage, or sample case, which he accordingly did, and the agent forwarded said statement of the contents and value of said sample case to a superior officer of the railroad company.   Not having been paid for the sample case and contents, he afterwards—to wit, on September 22, 1905 —instituted this suit before a justice of the peace for double the value of the property, as shown by the record.   Thereupon a trial was had before said justice of the peace, and the market value of said property so lost and destroyed was shown to be $78.09, and he obtained a judgment for $156.18—the same being double the value of said property, as claimed, under Code 1892, § 3569, together with all the costs expended in said cause.

From this judgment there was an appeal taken by the New Orleans & Northeastern Railroad Company to the circuit court, in which court a trial was had, in which it was shown by the testimony of the plaintiff that he was a drummer, and had traveled over the railroad for two years, and that it was customary for the railroad company to check drummers' samples; that in this particular case, the agent of the railroad company knew that it was a sample case at the time he gave plaintiff the check for

the same, and plaintiff offered the check and read it to the jury, and that plaintiff had said sample case checked as baggage from Vossburg to Pachuta.    The plaintiff also stated that. the sample case was unlike any other receptacle used in traveling—that is, unlike a suit case or valise; that it was heavy, and at the time that the agent gave him a check for it he spoke of the weight of it, and the agent's testimony shows that he knew it was many times heavier than a valise in which are carried personal effects.    The sample case, above mentioned, was never delivered to the appellee, nor was any account ever made of it except to report its loss or destruction.    Plaintiff asked the court to instruct the jury that, if they found for the plaintiff, their verdict should be for double the fair market value of the property sued for, which instruction was by the court refused, and the jury were confined, in the consideration of the damages suffered by plaintiff, to the fair market value of said property.    The jury found a verdict in behalf of plaintiff, and, in accordance with the instruction of the court, gave the plaintiff a verdict for the fair market value of the property sued for. ˙ Both the railroad company and the appellee, Shackelford, made motions for a new trial, and the second ground for a new trial in behalf of the appellee, Shackelford, was failure to award double damages.    This motion was by the court overruled, the court's idea being that plaintiff was not entitled to recover, in any event, any more than the fair market value of the property sued for.

The testimony makes it plain that the agent knew that Shackelford was a drummer, and that this was a sample case, and not a trunk or valise for ordinary baggage.    The agent testifies that he did not know the contents of the sample case, but the jury might very fairly have inferred from his knowledge of the sample case that it was filled with some heavy samples of some sort.    It also appears that the railroad company has been in the habit of checking this sample case as baggage for some two years here-

tofore. This, therefore, is a case unlike *Railroad Company* v. *Insurance Company*, 85 Miss., 7 (37 South. Rep., 500), in which we said: "The railroad knew nothing of these memoranda being in the trunk, and it is not a case where the railroad company has consented to receive or accept these memoranda as baggage knowingly or in accordance with any usage or custom of the railroad." This case falls precisely within the principles announced in the very able opinion of Battle, J., in *Kansas City, etc., R. R. Co.* v. *McGahey* (Ark.), 38 S. W. Rep., 659 (36 L. R. A., 781; 58 Am. St. Rep., 111), and in *Sloman* v. *Great Western Ry. Co.*, 67 N. Y., 208. In the first-named case, the court say, at p. 660 of 38 S. W. Rep.; p. 113 of 58 Am. St. Rep. (36 L. R. A., 781): "When a passenger presents to the carrier for transportation his goods and chattels, and makes known what they are, or exposes them to view, or packs them in a way to give any one concerned good reason to understand and know that they are not usually carried as baggage, and demands transportation of them as his luggage, and the carrier receives and carries them accordingly, he will be responsible for them as baggage, notwithstanding he was not bound to accept and transport them as such. If he wishes to avoid responsibility for them as baggage, he must refuse to receive them in that way. *Railway Co.* v. *Berry*, 60 Ark., 433 (30 S. W. Rep., 764; 28 L. R. A., 501; 46 Am. St. Rep., 212); *Minter* v. *Pacific R. R. Co.*, 41 Mo., 503 (97 Am. Dec., 288); *Sloman* v. *Great Western Ry. Co.*, 67 N. Y., 208; *Great Northern Ry. Co.* v. *Sherperd*, 8 Ex., 30; *Mauritz* v. *N. Y., etc., R. R. Co.* (C. C.), 23 Fed. Rep., 765; *Waldron* v. *Chicago, etc., Ry. Co.*, 1 Dak., 336 (46 N. W., 456); *Oakes* v. *Northern Pacific Ry. Co.*, 20 Ore., 392 (26 Pac. Rep., 230; 12 L. R. A., 318; 23 Am. St. Rep., 126); *Hannibal R. R. Co.* v. *Swift* (U. S.), 12 Wall., 262 (20 L. ed., 423); *Texas, etc., Ry. Co.* v. *Capps*, 2 Willson, Civ. Cas. Ct. App. (Tex.), sec. 35; *Hamburg-American Packet Co.* v. *Gattman*, 127 Ill., 598 (20 N. E. Rep., 662)." In the last-named case the facts were: A boy,

eighteen years of age, was employed as a traveling agent to sell goods by sample. He had two large trunks containing the samples, and a valise for his personal baggage. The trunks did not present the appearance of ordinary traveling trunks. They were thirty inches long, twenty-seven inches deep, and twenty-four inches wide. One was covered with oilcloth, and the other was of wood. "He delivered the trunks to a baggage master at a railroad depot, and, when asked where he wanted them checked to, replied that he did not then know,.as he had sent a dispatch to a customer at Fentonville, to know if he wanted any goods; if not, he wanted the trunks to go to Rochester; where he expected to meet some customers. Soon after he had them checked to Rochester, paying two dollars, and receiving a receipt ticket for them headed, 'Receipt Ticket for Extra Baggage and Dogs.'" The court held that the jury were authorized by these facts to infer that the baggage master understood that the agent was traveling for the purpose of selling goods, and that these trunks contained his wares, and that he was not entitled to have them carried as ordinary baggage, and further held that the railroad company, having this notice, was responsible for the loss of the trunks and their contents. And in *Kansas City, etc., R. R. Co. v. Mc-Gahey, supra,* it is further said: "Some courts hold that where a railroad company receives for transportation property which it is not bound by its contract with the passenger to transport as personal baggage, of which it has notice, it must be considered to assume, with reference to such property, the liability of a common carrier of merchandise—*Hannibal R. R. Co. v. Swift* (U. S.), 12 Wall., 262 (20 L. ed., 423); *Sloman v. Great Western Ry. Co.,* 67 N. Y., 208; while others say that, if it receives the property under such circumstances as baggage, it will be responsible therefor as a common carrier, and will be estopped from denying that it was baggage—*Texas, etc., Ry. Co. v. Capps,* 2 Willson, Civ. Cas. Ct. App. (Tex.), sec. 35; *Minter v. Pacific R. R. Co.,* 41 Mo., 503 (97 Am. Dec., 288); *Hoeger v. Chicago,*

*etc., R. R. Co.,* 63 Wis., 100 (23 N. W. Rep., 435; 53 Am. St. Rep., 271); *Chicago, etc., R. R. Co.* v. *Conklin,* 32 Kan., 55 (3 Pac. Rep., 762); *Butler* v. *Hudson River R. R. Co.,* 3 E. D. Smith (N. Y.), 571; *Railway Co.* v. *Berry,* 60 Ark., 433 (30 S. W. Rep., 764; 128 L. R. A., 501; 46 Am. St. Rep., 212). It seems to us the latter view is sustained by the better reason and weight of authority. But, be that as it may, the liability of the carrier for loss and damage in transportation in either case is the same."

The action of the court and the finding of the jury were correct on the direct appeal. Code 1892, § 3569, is in the following words:

"If a railroad company carelessly or willfully injure or allow to be injured or lost any trunk or baggage, either by improper handling or otherwise, it shall be liable to the owner in a sum not less than double the amount of the actual damage."

The court below refused to give a charge for double damage, and, we think, correctly. This statute is a highly penal statute, and was clearly meant to apply only to such baggage as, in a proper sense, personal baggage—articles of wearing apparel, etc. —contained in the usual trunk carried for personal convenience as a receptacle for wearing apparel and the like. It was never in the mind of the legislature to visit this penalty upon the railroad companies in a case like this, where the articles are not, in a proper legal sense, baggage, and where the liability of the railroad company arises from the fact that it knew the character of the articles, and, consequently, that they were not strictly baggage, and yet agreed and contracted to transport them as baggage—in other words, out of the estoppel arising against the railroad company in such case to deny that the articles were baggage and to be transported as such.

*The result is that the judgment of the court below is affirmed on appeal and cross-appeal.*