## HANNIBAL RAILROAD *v.* SWIFT.

1. The obligations and liabilities of a common carrier are not dependent upon contract, though they may be modified and limited by contract; they are imposed by the law, from the public nature of his employment.
2. If a common carrier of passengers and of goods and merchandise have reasonable ground for refusing to receive and carry persons applying for passage, and their baggage and other property, he is bound to insist at the time upon such ground if desirous of avoiding responsibility. If not thus insisting he receives the passengers and their baggage and other property, his liability is the same as though no ground for refusal existed.
3. The liability of a common carrier of goods and merchandise attaches when the property passes, with his assent, into his possession, and is not affected by the carriage in which it is transported, or the fact that the carriage is loaded by the owner. The common carrier is an insurer of the property carried, and upon him the duty rests to see that the packing and conveyance are such as to secure its safety.
4. It is not a ground for limiting the responsibility of a common carrier, where no interference is attempted with his control of the property carried, that the owner of the property accompanies it and keeps watch for its safety.
5. Where a railroad company receives for transportation, in cars which accompany its passenger trains, property of a passenger other than his baggage, in relation to which no fraud or concealment is practiced or attempted upon its employees, it assumes with reference to the property the liability of a common carrier of merchandise.
6. Surgical instruments, in the case of a surgeon in the army travelling with troops, constitute part of his baggage.

ERROR to the Circuit Court for the District of Missouri.

Swift, a surgeon in the army of the United States, brought a suit in the court below against the Hannibal and St. Joseph Railroad Company, to recover the value of certain baggage and personal property, owned by him, and lost when in a course of transportation on the said road.

The case, which was agreed on by the parties, and tried by the court without a jury, was thus:

The plaintiff had been stationed as a surgeon in the army, with his wife and family, previous to the rebellion, at Fort Randall, Dacotah Territory. A part of the garrison, with the plaintiff, having been ordered to report for duty at Cincinnati,

arrived in December, 1861, at St. Joseph, Missouri, where they were to take the cars of the railroad of the company now sued, for Hannibal, on the Mississippi River, the eastern end of the road. The plaintiff was accompanied by his wife and family, and they carried with them their wearing apparel, some household outfit, and other property.

On their arrival at St. Joseph, the commanding officer gave notice to the railroad company that he required transportation for the troops, their baggage, camp equipments, arms, munitions, and the chattels of himself, as well as those of the plaintiff, from St. Joseph to Hannibal. At that time nearly all that portion of the State of Missouri through which the railroad ran, was in a state of rebellion against the United States. For some months previously, armed bands of rebels had committed frequent depredations on the railroad by firing into trains, burning bridges, trains of cars, and station-houses, destroying culverts, and tearing up the track. The railroad agents at St. Joseph communicated these facts to the commanding officer of the troops, and so did the officer who was then in command of United States troops at St. Joseph. On account of the great danger to the command along the line of the road from these bands, the officers of the road refused to make any contract for the transportation of the command over the road, and none was made or signed until after the command had arrived at Hannibal, at which place the amount of compensation for transportation was agreed upon.

On demand of the commanding officer the railroad company furnished transportation for the troops, their baggage, camp equipments, arms, munitions of war, and the chattels of himself as well as those of the plaintiff. Out of several cars standing in the yard of the railroad company at St. Joseph, the commanding officer selected the car in which the baggage belonging to the officers and men of the command, its camp equipage, arms, and munitions, also the property of the plaintiff, for which this action was brought, were loaded. In the said car 9000 cartridges were placed. The car was well built and in a secure condition; and the plaintiff was

aware that his property was placed in that car. The commanding officer, as is customary where troops are moving by public conveyance from one point to another, detailed some men from his command to guard that car, while another portion packed and loaded it with the property mentioned. The soldiers carried their arms in their hands for use in case of an attack from the enemy. None of the railroad company's officers, agents, or servants had anything to do with selecting, packing, or loading the car selected, but after the same was completed, and the car locked up by the commanding officer, the agents of the railroad company placed the car in the train next to the tender of the engine that moved the car, and the train upon which the command were transported from St. Joseph to Hannibal. The train in which the car was placed was a regular passenger train of the railroad company, and was well manned and equipped. It had a baggage car attached to it and a baggage-master in charge of the car, whose duty it was to receive and take charge of all baggage of passengers transported on said train, and who did take charge of all baggage of passengers on the train that was offered him, checks being given therefor. There was ample room in the baggage car for the plaintiff's baggage, and the baggage car and its contents were not burned or destroyed. The car containing the property sued for was the only one burnt, and no part of the train was attacked or molested by armed rebels or otherwise as known. The plaintiff did not place the property sued for in charge of the baggage-master or other agent or servant of the defendant, except as above stated, nor was the same ever received by the defendant, except as thus stated, that is, by taking possession of the car and placing it in the train. It did not appear, from anything in the agreed case, that the control and management of the car or of the train by the agents and servants of the defendant were subsequently interfered with by the commanding officer, or the plaintiff, or any of the troops.

The car in which the property was loaded as above mentioned, whilst on the way from St. Joseph to Hannibal,

from some cause unknown, and, so far as known, without any fault of the agents, or servants of the railroad company, except as disclosed above, took fire and, with most of its contents, was consumed. After the discovery of the fire most of the contents of the car could have been saved, but from fear of injury by explosion of the cartridges known to be therein.

A surgeon in the United States Army is entitled by army regulations to 800 pounds of baggage.

The court held that the plaintiff was entitled to recover, and the case went to a referee under the stipulation of the parties to ascertain the damages sustained.

The property lost, for which the action was brought, consisted of the wearing apparel of plaintiff and family; table furniture, including silverware to the value of $204.50; three buffalo robes, two deer robes, hair mattresses and pillows, writing-desks, tables, engravings, pictures, and statuary, and numerous articles of a household outfit; besides jewelry to the value of $787.50; a set of surgical instruments of the value of $350, and an unpublished manuscript on veterinary surgery. The property weighed twenty-seven hundred pounds.

The value of the jewelry, as above stated, and $1000 as the value of the manuscript, were allowed by the referee in assessing the damages. He also allowed interest on the damages from the time of the loss to the filing of his report.

The Circuit Court, however, on exception, disallowed the value of the jewelry and the manuscript, as well as the interest given by the referee, allowing interest on the principal sum only from commencement of the suit.

The following exceptions of the defendant to the referee's report were overruled by the court: (1) To the allowance of the value of more than 800 pounds of baggage. (2) To the allowance of the value of the silverware. (3) To the allowance of the value of plaintiff's surgical instruments.

The court sustained the assessment for the sum of $3129.60, for which judgment was entered in favor of the plaintiff, and the railroad company brought the case here.

*Mr. James Carr, for the plaintiff in error:*

The goods were never delivered to the railroad company. It had expressly refused to receive them. The car in which they were shipped was selected by the officer in command of the troops; it was guarded, loaded, and packed by them, and then locked by the officer. They were in the *exclusive* custody and control of the officer and men. He and his men were the agents of the plaintiff for this particular purpose. They continued in this exclusive custody and control from the time that the goods were loaded, until the car in which they were, with its contents, was burnt. It was the only car in the train that was burnt. If the plaintiff desired to hold the company responsible as a common carrier why did he not deliver his goods to its servants, and let them select the car and pack and load to suit themselves? The company ought not to be held responsible for the unskilful or negligent loading and packing of the agents of the plaintiff.

But if it be held that there was a delivery to the company, then the delivery was obtained by compulsion, and is not binding.

The plaintiff was guilty of negligence in having his goods loaded in the car with the nine thousand musket cartridges; things of a highly combustible nature, and liable to ignite by the friction occasioned by the oscillation of the train. He voluntarily had his goods placed in that car. He had the privilege of putting them in the baggage car in charge of the baggage-master. He did not do so. The baggage car was not burnt or anything in it injured. *Volenti non fit injuria.*

The army regulations entitled the plaintiff to transportation for only eight hundred pounds of baggage; whereas the fact is, that he had two thousand seven hundred pounds of things, which he was having transported at the expense of the government, and at government rates, and under the ægis of the government. Nor was what he had baggage. Silverware is not baggage;* nor samples of merchandise;†

---

* Bell *v.* Drew, 4 E. D. Smith, 59.

† Hawkins *v.* Hoffman, 6 Hill, 586; Chicago, &c., Railroad Co. *v.* Marcus, 38 Illinois, 219.

nor a trunk of merchandise;* nor bank notes in a travelling trunk.†

*Mr. J. Hubley Ashton, contra:*

The case shows that on the demand of the officer in command of the troops, the defendant *furnished* transportation for them, as well as the plaintiff, and the public and private property which they brought; that the car in which this property was stored was placed *by the agents of the company* in the train on which the command was carried; and that, on the arrival of the troops at Hannibal, the compensation, payable for transporting the troops and the property, was fixed by agreement between the proper officer and the company, and the amount afterwards received by the defendant from the United States. The payment made by the government was thus for *one entire service*, just as if the amount had been agreed upon and paid before the troops started, and the company had then furnished cars to convey them and their baggage and the public property in their charge. The compensation received was none the less because it was adjusted afterwards.

The only reason why no contract was made before the train started was, that the company did not desire to be responsible for any loss happening through rebel violence. At that early day of the rebellion it was doubtless supposed that such loss would not be within the exception of the act of the public enemy.

No express stipulation was made, however, before the train went off, discharging the company from *any* of the duties annexed to its employment.

Now, in view of these facts, it is vain to say that this property was never delivered to the defendant, and that it refused to receive the goods.

The arrangement in regard to the baggage was made by the proper officer with the company. That this arrangement

---

* Pardee v. Drew, 25 Wendell, 459; Collins v. Boston & M. Railroad Co., 10 Cushing, 506.

† Orange County Bank v. Brown, 9 Wendell, 86.

contemplated a separate car for all the property with the command, and not the ordinary conveyance in the regular baggage car, as in the case of a private passenger, cannot affect the carrier's responsibility. Nor can it matter that the officer selected the car. The car was the defendant's. It must be equally unimportant that the soldiers loaded the car, and not the servants of the company, so far as the question of the delivery of the goods to it for carriage is concerned. A company will not be exonerated, because the owner of the goods furnishes his own car, and assumes the loading and unloading, and furnishes a brakeman to accompany the car. This is expressly decided in *Mallory* v. *Tioga Railroad*.[*] Nor will it be if the goods are placed in a crate belonging to an express company, and placed in charge of the carrier.[†] Nor where a warehouseman, having goods to send by rail, applied to the company, who ran a car upon a side track to the warehouse.[‡] Nor if the owner accompanies the goods to look after them.[§] Nor where a passenger on a boat takes charge of his property after it is placed on the boat.[‖] If the carrier receive an article for carriage, though not bound to receive it at the time or place, or in the condition in which offered, he is responsible.[¶]

No question of negligence, in the matter of loading the car, can arise here, as the agreed case expressly finds that the car took fire " from some cause unknown." It cannot be inferred here and now that it was fired by the explosion of the cartridges, or by a spark from the engine. The latter is, however, the most probable theory, as the *defendant's* agents placed the car next to the tender of the engine, the unsafest place of all for it in the train.

*On the question of damages.* As to the weight of baggage. The defendant received from the government the agreed

---

[*] 39 Barbour, 488.

[†] New Jersey Navigation Co. *v.* Merchants' Bank, 6 Howard, 344.

[‡] Illinois Central Railroad *v.* Smyser, 38 Illinois, 361; Merritt *v.* Old Colony Railway, 11 Allen, 80.

[§] Robinson *v.* Dunmore, 2 Bosanquet & Puller, 416.

[‖] Fisher *v.* Clisbee, 12 Illinois, 344.

[¶] Pickford *v.* Grand Junction Railway, 12 Meeson & Welsby, 766.

compensation for its carriage along with the rest of the property. Presumably, the *proper* fare and freight for persons and property accompanying the command were agreed upon; and the company received all it was entitled to for the service. It is not found that it claimed any greater compensation than it got. If the government paid for more baggage than the officer was entitled to carry, under regulations, in the quartermaster's wagons, that was its affair.

The company furnished transportation for all the property with the command, and incurred the carrier's responsibility for all. If some of the property was not strictly baggage, the acceptance of it for carriage renders the company liable for it.*

The term *baggage*, is necessarily a *relative* term, and must be defined by the facts and circumstances of each case; including the object and length of the journey, and the habits and condition in life of the passenger. It is a question for the jury, rather than the court.† Thus a proper sum of money for travelling expenses, contained in a trunk, is to be considered part of the passenger's personal baggage; and the amount must be determined by the whole journey, and include accidents, sickness, and sojourns by the way. So manuscript books, the property of a student, and the papers and books of a lawyer, in travelling on business.‡ A valuable diamond breastpin, a gold breastpin, and a miniature set with gold, have been included in a lady's baggage.§ So a *watch in a trunk.*‖

The only objection that can be made to the allowance of the little silverware is, that it is not found that it was necessary for plaintiff's family. But this court will presume that all

---

* Minter *v.* Pacific Railroad, 41 Missouri, 507; Glasco *v.* New York Central Railroad, 36 Barbour, 561; Cahill *v.* London and N. W. Railway, 13 C. B (N. S.), 818, Exchequer Chamber; Butler *v.* Hudson River Railroad, 3 E. D. Smith, 571.

† 1 Smith's Leading Cases, 6th American edition, 382; Merrill *v.* Grinnell, 30 New York, 609; Woods *v.* Devin, 13 Illinois, 746; Parmelee *v.* Fischer, 22 Illinois, 212.

‡ Hopkins *v.* Westcott, 6 Blatchford Circuit Court, 64.

§ McGill *v.* Rowand, 3 Barr, 452.    ‖ Jones *v.* Voorhees, 10 Ohio, 145.

matter of fact was found that may be necessary to support the judgment. Besides, the finding is that it was household outfit. And in the case of an officer travelling with his family from one post to another, it would be included in the term "baggage."

As for the surgical instruments, it has been held that these, in the case of a medical man, are baggage.*

Mr. Justice FIELD delivered the opinion of the court.

Two questions are presented by the record for our determination: 1st, whether upon the facts stated in the agreed case the railroad company was liable as a common carrier for the safe conveyance of the baggage and other property of the plaintiff; and, 2d, whether there was any error in the assessment of damages as allowed by the Circuit Court.

The railroad company was chartered by the legislature of Missouri in 1847, and for many years its railroad between the city of Hannibal, on the Mississippi River, and the city of Saint Joseph, on the Missouri River, has been constructed and in operation. Between those places the company was, in 1861, a common carrier, over its road, of passengers and their baggage, and of goods and merchandise. As such carrier, its duties and liabilities were plain; as a carrier of passengers it was bound, unless there was reasonable ground for refusal, to take all persons who applied for passage, and their baggage, and as a carrier of goods, to take all other property offered for transportation, and was responsible for the safe conveyance of the baggage and other property to the point for which they were destined, or the termination of the road, unless prevented by inevitable accident or the public enemy. Its obligations and liabilities in these respects were not dependent upon the contract of the parties, though they might have been modified and limited by such contract. They were imposed upon it by the law, from the public nature of its employment, independent of any contract.

If at any time reasonable ground existed for refusing to

---

* Giles v. Fauntleroy, 13 Maryland, 129.

receive and carry passengers applying for transportation, and their baggage and other property, the company was bound to insist upon such ground if desirous of avoiding responsibility. If not thus insisting, it received the passengers and their baggage and other property, its liability was the same as though no ground for refusal had ever existed.

It does not appear from the agreed case that the company refused to transport over its road the troops of the United States, and the plaintiff and his family who accompanied them, when they arrived, in December, 1861, at Saint Joseph, or their baggage, camp equipments, arms, munitions, and other property, but only that it refused to enter into any special contract for the transportation, on account of the danger to the troops from the insurrectionary condition of the country through which the road ran, and the frequent depredations committed by armed bands of rebels upon the railroad, and its track, bridges, depots, and station-houses.

It was usual at the time, and during the entire war, for railroad companies to transport troops of the United States, with their baggage, at a less rate per head, and their equipments, arms, and munitions at a less rate per pound, than the prices paid by ordinary passengers for similar services, and it was undoubtedly the desire of the commanding officer in this case to have a special contract as to the amount of compensation to be paid for the transportation. As we read the agreed statement it was only a contract of this kind, fixing the rate of compensation, which was refused.

Whether the reasons assigned would also have justified a refusal to transport the troops and the plaintiff, with his family, and their baggage and other property, it is unnecessary to determine. It is enough to fasten a liability upon the company that it did not insist upon these reasons and withhold the transportation, but, on the contrary, undertook the carriage of men and property without being subjected to any compulsion or coercion in the matter.

The liability of the company was in no respect affected by the fact that the baggage, camp equipments, arms, and munitions of the troops, and the property of the plaintiff were

placed in a separate car, selected by the commanding officer out of several cars standing in the yard of the company, and not in its regular baggage car, or by the fact that the car was loaded by some of the soldiers detailed for that purpose, and not by the servants of the defendant. The car selected belonged to the company, and, after it was loaded and locked by the commanding officer, the agents and employees of the company took charge of it and placed it in the regular train, which transported the troops and the plaintiff and his family, next to the tender of the engine. The liability of the company attached when it thus took possession of the property. No objection was made at the time to the selection of a separate car for the baggage and other property of the troops and the plaintiff, or to the kind of property offered for transportation, or to the manner in which the property was packed, or to the locking up of the car by the commanding officer. If objection existed on any of these grounds, or on any other ground not concealed but open to the observation of the company, it should have been stated before the property was received. The company might then have insisted, as a condition of its undertaking the transportation, upon the selection of a different car, or upon superintending its loading, or upon the possession of its key, or upon all of these things. Not having thus insisted, but having received the property and undertaken its transportation in the car in which it was placed, the company assumed, with respect to it, the ordinary liabilities of a common carrier.

The case of *Mallory* v. *The Tioga Railroad Company*,* is much stronger than this. There the company only agreed with the plaintiff to furnish the motive power to draw his cars laden with his property, he to load and unload the cars and to furnish brakemen, to be under the control of the conductor of the train, to accompany them, yet the company was held liable, as a common carrier, for injuries to the cars and the property of the plaintiff not caused by inevitable accident or the public enemy. The court did not consider

---

* 39 Barbour, 488.

the fact that the property was transported in the cars of the plaintiff, and that the cars were loaded and unloaded by him, affected, in any respect, the liability of the company, the entire train in which the cars were moved being, whilst on the route, under the control and management of its servants and employees.

In all such cases the liability of the common carrier attaches when the property passes, with his assent, into his possession, and is not affected by the car in which it is transported, or the manner in which the car is loaded. The common carrier is regarded as an insurer of the property carried, and upon him the duty rests to see that the packing and conveyance are such as to secure its safety. The consequences of his neglect in these particulars cannot be transferred to the owner of the property.

It does not distinctly appear, from the agreed case, whether any troops were detailed to guard the car which contained their property and that of the plaintiff, except while the car was being loaded. But if it were admitted that a special guard was appointed for the car on the route, the admission would not aid the company or relieve it of liability. The control and management of the car, or of the train, by the servants and employees of the company, were not impeded or interfered with; and where no such interference is attempted it can never be a ground for limiting the responsibility of the carrier that the owner of the property accompanies it and keeps a watchful lookout for its safety.

The ruling of the court upon the findings of the referee, appointed to ascertain the damages sustained by the plaintiff, does not appear to us to be open to any valid objection. A considerable portion of the property, it is true, was not personal baggage, which the company was obliged to transport under the contract to carry the person; nor does it appear that it was offered to the company as such. It embraced buffalo robes, hair mattresses, pillows, writing desks, tables, statuary, and pictures, in relation to which there could be no concealment, and it is not pretended that any was attempted. Where a railroad company receives for trans-

portation, in cars which accompany its passenger trains, property of this character, in relation to which no fraud or concealment is practiced or attempted upon its employees, it must be considered to assume, with reference to it, the liability of common carriers of merchandise. It may refuse to receive on the passenger train property other than the baggage of the passenger, for a contract to carry the person only implies an undertaking to transport such a limited quantity of articles as are ordinarily taken by travellers for their personal use and convenience; such quantity depending of course upon the station of the party, the object and length of the journey, and many other considerations. But if property offered with the passenger is not represented to be baggage, and it is not so packed as to assume that appearance, and it is received for transportation on the passenger train, there is no reason why the carrier shall not be held equally responsible for its safe conveyance as if it were placed on the freight train, as undoubtedly he can make the same charge for its carriage.

Here two companies of artillery in the army of the United States sought transportation with their arms, equipments, and ammunition. The plaintiff, as surgeon in the army, was ordered to accompany the troops, and for him and his family and his property transportation was also sought as part of the general transportation for the whole command. On arrival at Hannibal the amount of compensation for the entire transportation, which included carriage of men and property, was agreed upon and was subsequently paid. It is to be presumed when the compensation was fixed that the company took into consideration not merely the peculiar kind of property carried by the troops, which could hardly be treated as simple baggage of travellers, but also the property besides baggage possessed by the plaintiff and his family. The value of the unpublished treatise on veterinary surgery, and of the jewelry, as estimated by the referee, was excluded in the amount allowed. The value of the surgical instruments was properly included. Instruments of that character, in the case of a surgeon in the army travelling with troops,

may properly be regarded as part of his baggage. He may be required to use these instruments at any time, and must, accordingly, have them near his person where they can be had upon a moment's notice. Whether the table silverware of the plaintiff, although of a very limited amount, can be regarded in the same manner, admits of much doubt. It does not appear that the plaintiff or his family had any occasion for this ware on the cars, or even that they carried it with any intention of using it on the route. It is not, however, necessary to charge the defendant that it should be treated as baggage. Its value may be properly included in the amount of damages, considering it only as part of the property which the company received as a common carrier of goods, and against the loss of which, from any cause but inevitable accident or the public enemy, it was, as such carrier, an insurer to the plaintiff.

We see no error in the judgment of the Circuit Court, and it is accordingly

AFFIRMED.