## ABBOTT v. TOMPKINS. (No. 3233.)

(Court of Civil Appeals of Texas. Texarkana. April 22, 1926.)

1. **Shipping** ⚮⟶132(3.)—**In absence of evidence to contrary, carrier is presumed to know manner in which cargo of rice is loaded on his barge.**

In absence of evidence to contrary, carrier is presumed to know manner in which cargo of rice is loaded on his barge when he accepts it and issues bill of lading.

2. **Shipping** ⚮⟶132(3).

Tarpaulins used for covering cargo of rice in a barge are presumed spread under direction of carrier.

3. **Carriers** ⚮⟶108—**In absence of restrictions by contract, common carrier is liable as insurer for loss of goods, unless occurring by (1) act of God, (2) public enemy, (3) inherent defect in goods, or (4) shipper's negligence.**

In absence of restrictions by contract, a common carrier is liable as an insurer for the loss of goods received for transportation, unless the loss occurred by (1) act of God, (2) public enemy, (3) inherent defect in the goods, or (4) shipper's negligence.

4. **Carriers** ⚮⟶39.

Carrier may refuse to accept goods for transportation when loading is done by shipper in an improper or unsafe manner.

5. **Carriers** ⚮⟶42—**If carrier, with full knowledge of manner in which loading was done, accepts shipment without objection, shipper may assume that manner is satisfactory.**

If a carrier, with full knowledge of the manner in which loading was done, accepts shipment without objection, the shipper may assume that the manner of loading is satisfactory to carrier.

6. **Carriers** ⚮⟶107.

Protection from ordinary weather conditions is a common-law duty of a carrier.

7. **Shipping** ⚮⟶129—**That shipper loaded rice flat, which caused rain water to run under its coverings, injuring cargo, held not to relieve carrier from liability for damage.**

That shipper loaded rice on barges flat, which caused rain water to run under its coverings, and injure the cargo, *held* not to relieve carrier from liability for the damage, as, having accepted the cargo, he was bound to fulfill his duty to protect it from ordinary weather conditions.

Appeal from Harris County Court, at Law; Roy Scruggs, Judge.

Action by J. R. Thompkins against R. L. Abbott. Judgment for plaintiff and defendant appeals. Reversed and remanded.

Gill, Jones & Tyler, of Houston, for appellant.

Jones, Roberts & Monteith, of Houston, for appellee.

HODGES, J. Tompkins, the appellee, sued the appellant, Abbott, in the county court at law of Harris county to recover the sum of $662.68 claimed as freight charges for transporting rice upon barges from Anahuac and Turtle Bayou to Houston. In his answer Abbott admitted that the amount sued for was due, but in a cross-action sought a recovery of $994.50 as damages resulting from insufficient protection of the rice against rain while in the hands of appellee as carrier. He alleged that 221 sacks of the rice were damaged by water after they were loaded and delivered for carriage.

The extent of the damages is not contested in this appeal; neither is there any dispute about the cause or the conditions under which it occurred. The only question presented is, Was the carrier liable?

The testimony shows that Tompkins was the owner of barges plying between Anahuac and Turtle Bayou and Houston. Abbott owned a quantity of rice stored in warehouses at Anahuac and Turtle Bayou which he desired to ship to Houston. A contract for the shipment was made with the appellee. The loading was done by warehousemen, acting as agents for Abbott. The defense of Tompkins to the cross-action is that the rice was negligently and improperly loaded by Abbott's agents, and that this improper loading was the proximate cause of the damage. He testified that the rice was "loaded flat," leaving an uneven surface at the top. "I know," he said, "that the approved method of stowing a barge is for the purpose of shedding water. The rice should be stowed on the barge in such a way as to shed water. The way is to run two or three sacks high and then begin to break, and break every tier across until you reach the top with one sack of rice; and water will shed off of it." It was further shown by the evidence that Tompkins used several tarpaulins in covering the rice. These were lapped at different places, and the water ran under the laps, causing the damage.

In response to special issues submitted, the jury found that the rice was negligently loaded by the appellant's agents, and that such negligence was the proximate cause of the damage. The contention on this appeal is that the testimony does not support the find-

ing of the jury. Appellant rests his right to reverse the judgment upon the legal proposition that the carrier, having accepted the shipment with full knowledge of the manner in which the loading was done, assumed, as a matter of law, the duty of protecting the cargo against ordinary weather conditions. On the other hand, counsel for Tompkins rely upon the proposition that a carrier cannot be held liable for damages resulting from the negligence of the shipper in loading the goods.

[1-5] In the absence of evidence to the contrary, it must be assumed that the carrier knew the manner in which the loading had been done at the time he accepted the rice and issued the bills of lading. According to the evidence the rain which caused the damage fell after the barges were loaded and the bills of lading issued. Presumably the tarpaulins used for covering were spread under the direction of the appellee or his representative. In the absence of restrictions by contract a common carrier is liable as an insurer for the loss of goods received for transportation, unless such loss occurs by (1) the act of God, (2) public enemy, (3) some inherent defects in the goods, or (4) negligence on the part of the shipper. Gulf Ry. Co. v. Roberts (Tex. Civ. App.) 85 S. W. 479. That is the general rule from which there is no dissent. Some courts have qualified the fourth exception by holding the carrier liable even for damages resulting from the negligence of the shipper in loading, where such improper loading was known by the carrier at the time the shipment was accepted. Marble & Tile Co. v. Williams, 151 N. W. 419, 128 Minn. 514, L. R. A. 1915D, 1077; H. & St. J. Ry. Co. v. Swift, 79 U. S. 262 (12 Wall.) 20 L. Ed. 423; A. & V. Ry. Co. v. Amer. Col. Oil Co., 249 F. 308, 161 C. C. A. 316. Where the shipper assumes the duty of loading, the carrier may refuse to accept the goods for transportation when the loading is done in an improper or unsafe manner. If the carrier, with full knowledge of the manner in which the loading was done, does accept the shipment without objection, the shipper may assume that the manner of loading was satisfactory to the carrier. In Gulf, W. T. & P. Ry. Co. v. Wittnebert, 108 S. W. 150, 101 Tex. 368, 14 L. R. A. (N. S.) 1227, 130 Am. St. Rep. 858, 16 Ann. Cas. 1153, Justice Brown, for the Supreme Court, said:

"It was the duty of the railway company upon receiving the tank car to make a reasonable inspection of its condition with reference to its fitness for transportation."

Counsel for appellee refer to the case of I. & G. N. Ry. Co. v. Drought (Tex. Civ. App.) 100 S. W. 1011, as holding to the contrary of the rule above stated. The facts of that case are so different from those here involved that what is there said can hardly be made applicable to this controversy. There the freight consisted of a carload of molasses, shipped in barrels. The damage complained of resulted

from rough handling. As a defense the carrier pleaded that the barrels were so loaded by the shipper as to permit them to roll against one another, causing leakage. According to his testimony, the conductor in charge inspected the cargo before the car containing the barrels was incorporated into his train. He then discovered that some of the barrels were leaking, but concluded that this was due to fermentation. On appeal the case was reversed on the ground that the trial court improperly excluded the latter portion of the conductor's testimony. After disposing of that assignment the court, however, continued, using the following language:

"Where a shipper assumes the duty of loading cars for shipment, the carrier is not liable for damages arising from the improper loading of the goods. * * * The court gave the jury a charge embodying this principle, but coupled with it the provision that the conductor must not have known of the improper loading. We do not think that knowledge upon the part of the conductor would relieve a shipper of the effects of his contributory negligence. If the damage to the molasses was caused by the negligence of appellees in loading the car, knowledge of such negligence would not render it any less effective in defeating a claim for damages. The only inquiry is, Did the negligence of appellees contribute to the injury to their property?"

That ruling was intended to be applied to that case, and we are not called upon to follow it or dissent from it in this case.

In that case, and others relied on by the appellee, the negligence of the shipper consisted of the failure to do something essential to the safe carriage of the goods. His was the final act in the preparation for transportation. When the loading was completed the shipper, in effect, told the carrier that the goods were ready to be transported, and might be taken in that condition. If under those circumstances the carrier begins transportation without special inspection, there is manifestly a good reason for holding him blameless for an injury due to the shipper's negligence or ignorance.

[6, 7] In this case the rice was loaded on open barges, without any covering to protect it from rain. It was the duty of the carrier to furnish that covering. The covering is a part of the equipment of the barges. The manner in which the loading was done did not subject the cargoes to injury from any cause incidental to the operation of being transported. If no rain had fallen, or if proper covering had been supplied, no injury would have occurred. Protection from ordinary weather conditions is the common-law duty of the carrier. Presumably the appellee knew the manner in which the sacks were arranged when he accepted the cargo and issued his bills of lading. Having accepted the goods in that condition, the shipper had a right to expect that the carrier would perform his legal duty. Shaping the pile of

sacks so that they would effectively shed the water was merely for the convenience of the carrier in using his tarpaulin as covering. There is nothing in the evidence to suggest that he could not have readjusted the load, or have used some other means of furnishing a proper watershed.

We conclude that the facts show a failure of the carrier to perform his common-law duty, and that such failure was the proximate cause of the damage to the rice.

The judgment will therefore be reversed, and the cause remanded.