**Affirmed in Part, Reversed in Part, and Remanded and Opinion filed September 21, 2017.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-16-00286-CV

---

**EDWARD BUJNOCH, JUDY BUJNOCH, JOSE C. AGUILLON, AS NEXT FRIEND OF TINLEY BUJNOCH AGUILLON, A MINOR CHILD AND MONICA JANSSEN, AS DEPENDENT ADMINISTRATRIX OF THE ESTATE OF AMANDA LAUREN BUJNOCH, DECEASED, Appellants**

V.

**NATIONAL OILWELL VARCO, L.P., Appellee**

---

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2012-71172**

---

## O P I N I O N

Amanda Bujnoch was a passenger in a vehicle that slid off the roadway and rolled over after the vehicle encountered some oil-based mud cuttings. Amanda was ejected from the vehicle and killed. National Oilwell Varco, L.P (NOV) had loaded the mud into an open-top dump trailer that was operated by an independent trucking

company (Big Red). Neither Big Red nor NOV ensured that the truckload of mud had been secured before the truck departed the drill site. Appellants—Amanda's parents, the next friend of Amanda's minor daughter, and the administrator of Amanda's estate—sued NOV and others for negligence and other claims.

NOV filed a traditional motion for summary judgment, contending that it owed no duty to Amanda as a matter of law because: Big Red had a non-delegable duty to secure the load under federal and state regulations; NOV's internal policies did not create a duty to secure the load of an independent contractor; and it was not foreseeable that Big Red would act in a negligent manner. The trial court granted the motion.

We reverse the trial court's judgment on Appellants' negligence claim and remand for further proceedings.

## I.    PRESERVATION OF ERROR IS NOT REQUIRED

Initially, NOV asks this court to affirm because Appellants have failed to preserve error for all of their issues on appeal by not raising them in the trial court. We hold that Appellants are challenging the motion as insufficient as a matter of law to support summary judgment, for which no error preservation is required. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

The general rule is that a non-movant must expressly present to the trial court any reasons seeking to avoid the movant's entitlement to summary judgment, such as those set out in Rules 93 and 94 of the Texas Rules of Civil Procedure. *See id.*; *see also McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993). However, the party moving for a traditional summary judgment has the initial burden to submit sufficient evidence that establishes (1) there is no genuine issue as to any material fact and (2) the movant is entitled to judgment as a matter of law. *Amedisys,*

*Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). If the movant never meets this burden, the burden never shifts to the non-movant, and the non-movant need not respond or present any evidence. *Id.* Summary judgments must stand or fall on their own merits. *Id.* A trial court may not grant summary judgment by default. *Id.* at 512.

Although a non-movant may not urge on appeal "any and every *new* ground that he can think of," a non-movant need not preserve a contention that grounds presented in the motion are "insufficient *as a matter of law* to support summary judgment." *Clear Creek*, 589 S.W.2d at 678; *see also Amedisys*, 437 S.W.3d at 512 ("Thus, a non-movant who fails to raise any issues in response to a summary judgment motion may still challenge, on appeal, the legal sufficiency of the grounds presented by the movant." (quotation omitted)). For example, in *Amedisys* the trial court granted the plaintiff summary judgment on its breach-of-contract claim. *See id.* at 510. The Supreme Court of Texas held that the non-movant did not need to preserve error to argue on appeal that the plaintiff failed to show the existence of a contract. *See id.* at 511–12.

NOV had the burden to conclusively negate at least one element of Appellants' negligence claim—in particular, the existence of a duty. *See Johnson Cty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996). In its motion, NOV attempted to negate the existence of a duty in part by arguing that Big Red was a "carrier" and thus had a "non-delegable duty under federal and Texas law to secure its load safely." NOV cited federal and Texas regulations and the decision in *Texas Specialty Trailers, Inc. v. Jackson & Simmen Drilling Co.*, No. 2-07-228-CV, 2009 WL 2462530 (Tex. App.—Fort Worth Aug. 13, 2009, pet. denied) (mem. op.). NOV also argued that its internal company policies did not create a duty, and it was not

3

foreseeable that Big Red would fail to secure the load before entering a public highway.

In their response, Appellants did not refer to any legal authorities other than the standard of review and instead focused on the evidence of NOV's "safe work" policy requiring NOV's employee to verify that the driver of a disposal truck secured the load before leaving the drill site.[1] On appeal, however, Appellants address NOV's arguments concerning the regulations and *Texas Specialty*; and Appellants contend that Big Red's duty does not relieve NOV of its separate common law duty to use reasonable care in the loading and securing of mud.

We hold that Appellants' arguments on appeal concern whether NOV met its summary-judgment burden to negate duty as a matter of law. Appellants challenge the legal sufficiency of the grounds presented in NOV's motion. Accordingly, Appellants have not forfeited their appellate complaints by failing to make more specific arguments to the trial court. *See Amedisys*, 437 S.W.3d at 511–12. We will consider whether NOV negated the existence of duty as a matter of law.

## II. DUTY

Appellants contend that the trial court erred by granting summary judgment based on NOV's argument that it had no duty to secure the load of mud. Appellants contend that NOV had a common law duty to properly secure the load of mud, regardless of federal and state regulations applicable to Big Red, and that a vehicle accident was a foreseeable result of NOV's conduct.

---

[1] In light of NOV's arguments, Appellants' response would not have been particularly helpful to the trial court. *See Clear Creek*, 589 S.W.2d at 678 (noting that it would be "prudent and helpful to the trial court" for a non-movant to file a response challenging the sufficiency of the motion for summary judgment).

4

## A. Standard of Review and General Principles

We review the granting of summary judgment de novo. *Lightning Oil Co. v. Andarko E&P Onshore*, LLC, No. No. 15-0910, 2017 WL 2200343, at \*3 (Tex. May 19, 2017). NOV, as the movant, had the initial burden to submit sufficient evidence that establishes (1) there is no genuine issue as to any material fact and (2) NOV is entitled to judgment as a matter of law. *See Amedisys*, 437 S.W.3d at 511. We review the evidence in the light most favorable to the Appellants, as non-movants, indulging every reasonable inference in their favor and resolving doubts against the motion. *Lightning Oil*, 2017 WL 2200343, at \*3.

An element of negligence is the existence of a legal duty owed by one person to another. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Whether a legal duty exists under a set of facts is a question of law for the court to decide from the facts surrounding the occurrence in question. *Id.* In making this determination, courts "consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Id.* Foreseeability of the risk is the foremost and dominant consideration. *Id.*

## B. Evidence

For purposes of summary judgment, it does not appear that the parties have relied on conflicting evidence. Sanchez Oil and Gas Corporation operated a drilling rig near Flatonia, Texas, and hired NOV for solids control. NOV's solids control operator, one of two NOV employees at the drill site, testified that it was his responsibility to load the trailers that transported mud away from the drill site. The solids control operator did not rely on the driver of the Big Red trailer regarding how to load the trailer.

On the night of the accident, the solids control operator spent two hours using a backhoe to load mud into Big Red's open-top dump trailer. Big Red's trailer did not have a tarp or cover. The solids control operator described some of the material as small, hard solids—like pebbles—with oil-based mud film on them. The rest of the material was a "thick and slimy . . . paste-like material." He believed that if mud leaked onto a highway, it would pose a risk to people driving on the highway.

The solids control operator testified that the driver did not get out of the trailer and walk around to do any type of verification that the load was secured. The solids control operator did not verify that the driver secured the load, which the solids control operator should have done under NOV's "safe work" procedure. The solids control operator looked at the back of the trailer, and it looked latched. But, he never put his hands on it to see how tight it was. He did not notice that the trailer was leaking mud. After he and the driver signed some paperwork, the driver left immediately.

The driver testified that he did not expect the solids control operator to latch the trailer or to make sure that the driver had done it. The driver did not do anything to verify that the load was secured or that the rear latches on the trailer were locked and closed before leaving the drill site. He testified, "[I]t's just something that slipped my mind."

## C.    Big Red's Duty to NOV Not Dispositive of NOV's Duty to Third Parties

NOV argued in its motion for summary judgment that "Big Red, as a carrier, has a non-delegable duty under federal and Texas law to secure its load safely," and it is "solely the carrier's duty to secure its load prior to transporting it on public highways." NOV relied on federal regulations and related authority applicable to commercial motor carriers. We examine these authorities but hold that they do not

negate as a matter of law the negligence duty of NOV upon which Appellants seek to recover in this case.

NOV relied on a federal regulation that requires drivers of commercial motor vehicles to secure their cargo.[2] NOV also relied on the Fort Worth Court of Appeals' decision in *Texas Specialty Trailers, Inc. v. Jackson & Simmen Drilling Co.*, No. 02-07-228-CV, 2009 WL 2462530 (Tex. App.—Fort Worth Aug. 13, 2009, pet. denied) (mem. op.). This case involved a suit by the shipper against the carrier after the carrier's trailer separated from the vehicle and rolled into a ditch, damaging the shipper's property and causing lost profits. *See id.* at *1. Relying on the same regulations cited by NOV and the common law, the court of appeals reasoned that carriers are "solely responsible for distributing and loading cargo," and carriers are generally "'fully' liable for any loss or injury to property occurring during transport." *Id.* at *7. The court noted that carriers may avoid this liability by showing that the loss or injury at issue was caused solely by the fault of the shipper. *Id.* "This exception to carrier liability, however, only applies when the shipper assumes the

---

[2] The regulation, incorporated into Texas law, provides as follows:

(a) General. A driver may not operate a commercial motor vehicle and a motor carrier may not require or permit a driver to operate a commercial motor vehicle unless—

  (1) The commercial motor vehicle's cargo is properly distributed and adequately secured as specified in §§ 393.100 through 393.136 of this subchapter.

. . . .

(b) Drivers of trucks and truck tractors. Except as provided in paragraph (b)(4) of this section, the driver of a truck or truck tractor must—

  (1) Assure himself/herself that the provisions of paragraph (a) of this section have been complied with before he/she drives that commercial motor vehicle;

49 C.F.R. § 392.9; *see also* 37 Tex. Admin. Code § 4.11 ("The director of the Texas Department of Public Safety incorporates, by reference, the Federal Motor Carrier Safety Regulations, Title 49, Code of Federal Regulations, Parts . . . 390–393 . . . including all interpretations thereto . . . .").

carrier's responsibility for loading and securing the cargo." *Id.* The court of appeals noted that there was evidence that the carrier admitted it was responsible for loading and securing the cargo. *Id.* at \*7–8. The carrier's employee testified that the shipper only rendered assistance and did whatever the carrier directed the shipper to do. *Id.* at \*7. Because the shipper had no duty as a matter of law with regard to loading the cargo under the evidence presented, the court of appeals held that the trial court did not err by failing to submit jury issues regarding the shipper's proportionate responsibility. *Id.* at \*8.

*Texas Specialty* applied the common law duty a carrier owes to a shipper for damaged cargo, sometimes referred to as the "*Savage* rule." *See id.* at \*7 & nn.65–67 (citing *United States v. Savage Truck Line, Inc.*, 209 F.2d 442, 445–47 (4th Cir. 1953), and *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 368 S.W.2d 99, 101 (Tex. 1963), *aff'd*, 377 U.S. 134 (1964)).[3] Under the common law, a carrier's liability for damage to cargo is similar to that of an insurer's. *See Savage Truck Line*, 209 F.2d at 445; *Elmore & Stahl*, 368 S.W.2d at 102. If a loss is not due to one of several exceptions, it is immaterial whether the carrier has exercised due care or was negligent. *Elmore & Stahl*, 368 S.W.2d at 101. One of the exceptions is the fault of the shipper. *Id.*[4]

The common law *Savage* rule and the subsequent federal regulations are consistent because they require drivers to inspect the security of cargo both before

---

[3] *See generally Whiteside v. United States*, No. 1:11-CV-154, 2013 WL 2355522, at \*6–7 (E.D. Tex. May 28, 2013).

[4] "Some courts have qualified [this] exception by holding the carrier liable even for damages resulting from the negligence of the shipper in loading, where such improper loading was known by the carrier at the time the shipment was accepted." *Abbott v. Tompkins*, 283 S.W. 647, 648 (Tex. Civ. App.—Texarkana 1926, no writ); *see Savage Truck Line*, 209 F.2d at 445 ("When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.").

driving a truck and during transport. *See Smart v. Am. Welding & Tank Co.*, 826 A.2d 570, 575 (N.H. 2003). The *Savage* rule and attendant regulations reflect the "everyday practice and understanding in the trucking business . . . that carriers logically should have the final responsibility for the loads that they haul." *Decker v. New England Pub. Warehouse, Inc.*, 749 A.2d 762, 766–67 (Me. 2000) ("The *Savage* rule simply extends the industry's reasonable understanding to negligence suits involving carriers and shippers."); *accord Vargo-Schaper v. Weyerhaeuser Co.*, 619 F.3d 845, 849 (8th Cir. 2010); *Smart*, 826 S.2d at 573–74. Outside of Texas, the rule has been extended beyond cases involving damage to cargo, including cases where employees of carriers have sustained personal injuries. *Decker*, 749 A.2d at 767.

But the parties do not cite, and this court has not found, any case applying the *Savage* rule and attendant regulations to negate a defendant's duty owed to innocent third parties, such as Amanda Bujnoch. Some courts have reasoned that the *Savage* rule would not apply under these circumstances:

> The situation would be markedly different in a case involving a party outside of the trucking industry. Pedestrians and non-commercial motorists, to name two possible third parties, injured in an accident caused by a shipper's negligent loading of cargo would still be able to sue that shipper for compensation despite the *Savage* rule. Shippers could not rely on *Savage* to bar claims from those not involved in the industry and who had no opportunity to remedy any negligence.

*Id.* at 767 n.3; *accord Syngenta Crop Prod., Inc. v. Doyle Brant, Inc.*, No. 3:06-CV-84-S, 2008 WL 167293, at *3 (W.D. Ky. Jan. 16, 2008) (denying summary judgment because the *Savage* rule was inapplicable to an injured party who was not involved

9

in the trucking industry and had no opportunity to ensure that chemicals were properly loaded on the trailer).[5]

In sum, the common law rules regarding a carrier's liability to a shipper, as reflected in *Texas Specialty* and attendant regulations, govern the rights and liabilities among carriers and shippers. But this case involves personal injury to an innocent third party with no connection to the trucking industry—someone who had no opportunity to remedy any negligence. Thus, we are not persuaded that NOV's authorities negate duty as a matter of law in this case. We now turn to the issue of whether NOV owed a duty to Amanda under the familiar duty principles.

## D. NOV's Duty to Use Reasonable Care in the Rendering of Services

NOV argued in its motion for summary judgment that (1) it did not "owe the traveling public a duty to inspect or ensure that Big Red, an independent contractor, secured its load prior to entering a public road or highway"; (2) NOV's safe-work policy did not create a duty when none otherwise existed; and (3) it was not foreseeable that the driver would fail to exercise due care and secure his load before entering a public highway. Appellants contend that NOV owed Amanda a duty to exercise reasonable care in loading and securing the mud and that NOV undertook to perform a duty owed by another to Amanda.

Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances. *Torrington Co. v. Stutzman*, 46

---

[5] Furthermore, at least one court has held that the *Savage* rule and federal regulations did not negate the duty of a shipper in a case involving a contribution claim asserted by the carrier against the shipper after they had settled with injured third parties. *See Locicero v. Interspace Corp.*, 266 N.W.2d 423, 425, 427 (Wis. 1978) (holding that the *Savage* rule and federal regulations impose a duty on the carrier to secure the load safely, "but they do not relieve those who breach a common law duty of care from liability for their negligence and their comparative share of the resulting damages"—in particular, they do not relieve a shipper from "common law or contractual liability for causing an unsafe load").

S.W.3d 829, 837 (Tex. 2000). Thus, as a matter of law, a mere bystander who did not create a dangerous situation is not required to become a good Samaritan and prevent injury to others. *Id.* (citing *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995)). But, if a party negligently creates a dangerous situation, the party then has a duty "to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby." *Id.* (quoting *SmithKline Beecham*, 903 S.W.2d at 353). One who acts may thereby become subject to the duty of acting carefully. *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 396 (Tex. 1991) (citing *Glanzer v. Shepard*, 135 N.E. 275, 276 (N.Y. 1922)). Thus, "a duty to use reasonable care may arise when a person undertakes to provide services to another." *Torrington*, 46 S.W.3d at 837.

As to third parties, specifically, the Restatement (Second) of Torts § 324A states the rule:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if . . . he has undertaken to perform a duty owed by the other to the third person[.]

Restatement (Second) of Torts § 324A (1965), *quoted in Sbrusch*, 818 S.W.2d at 396.

The First Court of Appeals has relied on the Restatement to uphold a duty for a defendant who supervised the loading of a pipe when the pipe later fell off a moving truck and killed another driver. *See C & H Nationwide, Inc. v. Thompson*, 810 S.W.2d 259, 267 (Tex. App.—Houston [1st Dist.] 1991), *rev'd in part on other grounds*, 903 S.W.2d 315 (Tex. 1994). In that case, Shell hired C & H Nationwide

11

to transport Shell's pipe from Energy Coatings' facility after Energy Coatings had coated the pipe with epoxy. *See id.* at 262. Shell also hired Ecotech to "monitor the coating process and monitor the loading and securing of the pipe to ensure the coating was not damaged." *Id.* Energy Coatings loaded the pipe onto the tractor trailer, and C & H Nationwide secured it with straps. *Id.* The court of appeals upheld the jury's verdict against Ecotech despite Ecotech's argument that it owed no duty to the decedent. *See id.* 266–67.

The court of appeals reasoned that "a duty arises when a person's conduct poses a foreseeable risk to another that could be avoided by the exercise of ordinary care." *Id.* at 266. The court also noted that a person should exercise ordinary care to avoid harm if a reasonable person would recognize that his conduct poses a risk of harm to another. *Id.* The court held that Ecotech could "foresee that if the pipe was not safely secured, the pipe might come off the trailer in transit and injure another motorist." *Id.* at 267. And, "Ecotech could foresee that its conduct in supervising the loading of the pipe could create a risk of harm to another and that risk of harm could be avoided by exercising ordinary care in its conduct." *Id.* Thus, the decedent was within the scope of Ecotech's duty to exercise ordinary care in supervising the loading of the pipe. *Id.*

Also relying on the Restatement, the Dallas Court of Appeals reversed the trial court's summary judgment for the defendant in *Steward v. Costello*, No. 05-02-00679-CV, 2003 WL 115453, at *1 (Tex. App.—Dallas Jan. 14, 2003, no pet.) (mem. op.). A customer purchased some pipes from Kaufman Pipe and Supply, and Kaufman's employee assisted the customer in loading the pipe onto a flatbed trailer. *Id.* The customer secured the pipes to the trailer, and Kaufman's employee measured the pipes extending over the end of the trailer to determine whether they required red flags. *See id.* at *1 & n.1. He told the customer that it was "legal," and the

customer left. *Id.* at *1. The plaintiff collided with the trailer and was injured by the pipes. *Id.* The plaintiff sued Kaufman and alleged that Kaufman was negligent by failing to ensure the pipes were properly secured and failing to put a red flag on the pipes. *Id.*

In *Steward*, the parties did not dispute that the customer had a duty to secure the pipes to the trailer and attach a red flag if they extended too far past the trailer. *Id.* at *2. The issue was whether Kaufman assumed this duty. *Id.* The court of appeals upheld Kaufman's duty to the plaintiff because the Kaufman employee's "job duties included loading pipe purchased from Kaufman into the customer's vehicle," and the employee "knew it was necessary to secure the pipe in order to prevent injury to third parties." *Id.*

Here, the parties do not dispute that Big Red, as a carrier, ordinarily has the duty to load and secure cargo. *See Texas Specialty*, 2009 WL 2462530, at *7. NOV's solids control operator testified, however, that it was NOV's responsibility to load the open-top dump trailer with mud. As part of this responsibility, the solids control operator testified that he was supposed to verify that the driver had secured the load of mud. Yet, the solids control operator testified that the driver did not get out of the trailer or verify that the load was secured. And, the solids control operator recognized that if mud leaked onto a highway, it would pose a risk to people traveling on the highway, like Amanda Bujnoch.

NOV was not a mere bystander in this case. NOV, having undertaken the duty to load the mud, was required to use reasonable care in doing so to prevent an unreasonable risk of harm to other motorists who would be affected if the load was inadequately secured. *Cf. Golden Spread Council, Inc. No. 562 of Boy Scouts of America v. Akins*, 926 S.W.2d 287, 292 (Tex. 1996) (holding that the defendant, having undertaken to recommend someone for a position, had a duty to use

13

reasonable care in doing so to prevent an unreasonable risk of harm to others who would be affected). By loading mud into an open-top dump trailer and foreseeing that spillage could cause injury to motorists, NOV had a duty "to do something about it to prevent injury to others." *See Torrington*, 46 S.W.3d at 837. NOV's loading the mud into an open-top dump trailer without allegedly securing the load or verifying that the load was secured, and with knowledge that the trailer would traverse Texas highways, posed a foreseeable risk to other motorists. *See Thompson*, 810 S.W.2d at 266. A reasonable actor in NOV's position would recognize that its conduct posed a risk of harm to others. *See id.*

NOV contends that there is "no evidence cited by Appellants that NOV could foresee that [the driver] would not exercise due care and secure his load before entering a public highway." But the analysis of foreseeability concerns the "risk of harm (injury) to others," not whether another actor with a duty will fulfill that duty. *See Phillips*, 801 S.W.2d at 527. It is only in "exceptional cases" that a party with a duty may shift the "entire responsibility for the situation" to another; this is not one of those cases. *See* Restatement (Second) of Torts § 452, cmt. d–e (1965) (noting that when "the personal safety of third persons is threatened, it is probably true that normally any duty to exercise reasonable care for their protection cannot be shifted"). Regardless, Appellants have cited to sufficient evidence to raise a fact issue on the foreseeability of whether the driver would secure the load of mud. For example, NOV had a "safe work" procedure to verify that truck drivers secured their loads, and NOV knew that the driver did not get out of the truck and walk around to do any type of verification that the load was secure. *Cf. Thompson*, 810 S.W.2d at 267 (duty to third-party motorist established by undertaking to monitor the loading and securing of cargo performed by others).

14

Finally, NOV cites several cases concerning the duty a landowner owes to the traveling public on roads adjacent to their land.[6] In each case, the court declined to place a duty on landowners to prevent accidents when motorists collided near the property. In *Naumann* for example, upon which NOV principally relies, a tractor-trailer was loaded with cargo at the landowner's premises. 749 S.W.2d at 190. When the tractor-trailer left the premises, it made a right turn onto a two-lane road and blocked both lanes of traffic in the process. *Id.* Another driver struck the tractor-trailer. *Id.* The court of appeals held that the landowner owed no duty to the motorist because "a landowner's duty to exercise reasonable care not to endanger the safety of persons on an abutting highway does not create an obligation to guard passing motorists against the possible negligence of an independent contractor over whom the landowner exercises no control and whose competence to perform his duties the landowner has no reason to doubt." *Id.* at 191–92. Critically, the dangerous situation in *Naumann* was not created by the landowner. *Id.* at 192. The landowner was a "mere bystander who did not create the dangerous situation." *Id.* "The same dangerous situation exists every time a tractor-trailer makes a right turn at an intersection of two-laned roads." *Id.*

NOV's landowner cases involve failures of the drivers to exercise due care while driving or parking on roadways, and the landowners had no reason to foresee that the drivers would act negligently. Here, NOV's duty concerns conduct at the drilling site when NOV loaded the mud into an open-top dump trailer. Unlike in

---

[6] NOV cites the following cases: *Heubotter v. Diamond Shamrock Refining Co.*, No. 04-99-00243-CV, 1999 WL 1244422 (Tex. App.—San Antonio Dec. 22, 1999, no pet.) (not designated for publication); *Lawson v. B Four Corp.*, 888 S.W.2d 31 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Dixon v. Houston Raceway Park, Inc.*, 874 S.W.2d 760 (Tex. App.—Houston [1st Dist.] 1994, no writ); *Carter v. Steere Tank Lines, Inc.*, 835 S.W.2d 176 (Tex. App.—Amarillo 1992, writ denied); *Naumann v. Windsor Gypsum, Inc.*, 749 S.W.2d 189 (Tex. App.—San Antonio 1988, writ denied).

*Naumann*, NOV participated in creating the dangerous situation that led to the injury: NOV placed on a trailer, which NOV knew would traverse Texas highways, material that NOV knew could cause a hazard to other motorists if it was inadequately secured.

In sum, NOV did not meet its summary-judgment burden to negate duty as a matter of law. The trial court erred by granting summary judgment on NOV's negligence claim.[7]

### III. CONCLUSION

Having sustained Appellants' issues concerning summary judgment on their negligence claim, we reverse that portion of the trial court's judgment and remand for further proceedings.

/s/    Ken Wise
       Justice


Panel consists of Chief Justice Frost and Justices Christopher and Wise.

---

[7] On appeal, Appellants challenge the summary judgment regarding their negligence claim only, not any of their other claims.